Rule 23 order filed
December 3, 2020.
Motion to publish granted
December 21, 2020.

2020 IL App (5th) 180461

NO. 5-18-0461

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Randolph County. |
| | ) | |
| v. | ) | No. 17-CF-78 |
| | ) | |
| CHARLES SCHAEFER, | ) | Honorable |
| | ) | Richard A. Brown, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Barberis and Wharton concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a stipulated bench trial, the defendant was convicted of two counts of aggravated fleeing or attempting to elude a peace officer (625 ILCS 5/11-204.1(a)(1), (4) (West 2016)). The trial court sentenced the defendant to concurrent terms of 30 months in the Illinois Department of Corrections (IDOC), followed by one year of mandatory supervised release. On appeal, the defendant raises three points of error. First, the defendant contends that trial counsel was ineffective for not moving to revoke the defendant's bond, thereby allegedly forfeiting his right to a speedy trial. Next, the defendant asserts that trial counsel suffered a conflict of interest because counsel was required to argue his own ineffectiveness. Finally, the defendant asks this court to vacate one of his convictions for aggravated fleeing or attempting to elude a peace officer under

1

the one-act, one-crime doctrine. For the reasons that follow, we affirm the defendant's convictions and sentence.

¶ 2                                    BACKGROUND

¶ 3    On May 6, 2017, Officer Ralph Jones attempted to stop a vehicle being driven by the defendant. Officer Jones recognized the defendant from a prior arrest in March 2017 for driving with a suspended license. Officer Jones initiated the sirens on his police car, but the defendant refused to stop his vehicle. Instead, the defendant led Officer Jones on a chase through Sparta, Illinois, to outside the city limits in Randolph County. During this chase, the defendant failed to stop at several stop signs and reached speeds of more than 21 miles per hour over the posted speed limit. Officer Jones informed police dispatch of a speed of 89 miles per hour, where the posted speed limit was 55 miles per hour. Officer Jones eventually terminated his pursuit of the defendant for safety reasons and sought a warrant for the defendant's arrest.

¶ 4    On May 10, 2017, the State charged the defendant by criminal information with two counts of aggravated fleeing or attempting to elude a peace officer (625 ILCS 5/11-204.1 (West 2016)) and a warrant was issued for the defendant's arrest. Count I of the criminal information alleged that the defendant, after being directed by a police officer to stop his vehicle, increased his speed to a rate of at least 21 miles per hour over the speed limit (*id.* § 11-204.1(a)(1)), and count II alleged that the defendant, after being directed by a police officer to stop his vehicle, disobeyed two or more traffic control devices (*id.* § 11-204.1(a)(4)).

¶ 5    On May 11, 2017, the defendant was taken into Perry County's custody where he was charged with possession of methamphetamine (720 ILCS 646/60 (West 2016)), cause No. 2017-

2

CF-79.[1] On July 24, 2017, the defendant was transferred from the Perry County jail to the Randolph County circuit court for his first appearance. At this hearing, the State informed the trial court that the defendant had recently pled guilty to possession of methamphetamine in the Perry County circuit court and was awaiting sentencing on that case. The State told the trial court that the Perry County judge gave the defendant a recognizance bond so that he could appear in Randolph County "and try to get something worked out" before his sentencing in Perry County. The Randolph County trial judge then explained the charges against the defendant in Randolph County. The trial judge entered a plea of not guilty on the defendant's behalf and appointed the public defender, James Kelley, to represent the defendant. The case was also set for a preliminary hearing. The defendant signed a written notice indicating his understanding that he was to appear at the Randolph County circuit court on August 7, 2017, for a preliminary hearing. That same day, the defendant posted bond in Randolph County and was released from custody.

¶ 6    On August 7, 2017, the defendant failed to appear for his preliminary hearing. Kelley informed the trial court that the defendant had not made any effort to contact Kelley's office, and Kelley requested 48 hours to ascertain the defendant's whereabouts. The State requested a "no bond, no limit warrant," but did not object to Kelley's request for time to locate the defendant. The trial court granted Kelley's request and stated that the court would stay an arrest warrant until August 10, 2017. On August 8, 2017, however, the trial court issued a warrant for the defendant's arrest.

---

[1]This charge is unrelated to the issues in this case but explains why the defendant was arrested in Perry County.

¶ 7    Nothing occurred on the defendant's case until November 2, 2017, when the defendant filed, from IDOC,[2] a "Demand for Speedy Trial and/or Quash Warrant," a "Motion to Dismiss," a "Petition to Vacate Bond Forfeiture and Judgment," a "Petition for Return of Forfeitured [*sic*] Bond," and an affidavit. In his *pro se* pleadings, the defendant stated that Randolph County mistakenly released him after he posted bond because Perry County had a hold on the defendant. The defendant further claimed that, after he was released from Randolph County, he received a phone call and was told to return to the Perry County jail. The defendant alleged that his attorney "knew this but did nothing," as the defendant was never brought back to Randolph County for his preliminary hearing.

¶ 8    After the defendant's pleadings were filed, the arrest warrant for the defendant was quashed, and the case was set for a case management conference on December 4, 2017. On this date, the defendant was brought before the trial court and new counsel, Beth Heaton, was appointed.[3] At this case management conference, the defendant addressed the trial court regarding the pleadings he filed on November 2, 2017. The defendant was concerned that his bond had been forfeited while he was incarcerated in either Perry County or IDOC. The State informed the trial court that the arrest warrant had been quashed and the defendant's bond had not been forfeited.

¶ 9    On January 29, 2018, the trial court held another case management conference. The State announced that it was ready for trial, had turned over discovery, and made the defendant a plea offer. Heaton advised that the defendant was persistent in his demand for a jury trial and requested the case be set on the next jury trial date. Heaton also indicated that "this remains Kelley's case."

_____

[2]On September 11, 2017, the defendant was sentenced in the Perry County circuit court to 30 months in IDOC.

[3]The record indicates that attorney James Kelley had become incapacitated, and unable to represent the defendant, but does not reveal when Kelley became temporarily incapacitated.

4

The defendant then inquired about the *pro se* pleadings he filed on November 2, 2017, regarding a speedy trial and bond forfeiture. The State reminded the trial court that the arrest warrant for the defendant had been quashed and that his bond was not forfeited. The State asserted that the defendant did not have an automatic speedy trial right because the defendant was not in custody on a Randolph County warrant. The defendant stressed that he was asking for a speedy trial, and the trial court told defendant his trial date would be April 2, 2018. Neither defendant nor Heaton objected to this trial setting. The trial court also informed the defendant that Kelley was ill and set the defendant's case for another case management conference prior to the trial date when Kelley would be present.

¶ 10    On March 1, 2018, the trial court held a hearing at which Kelley was reappointed to represent the defendant. Kelley indicated that this was the first time he had met with the defendant since being appointed on July 24, 2017. Kelley then argued for the dismissal of the defendant's case based on a violation of the defendant's right to a speedy trial. Kelley argued that the defendant filed a speedy trial demand on November 2, 2017, and that the defendant had been in continuous custody since that date. The State replied that the defendant's demand was improper, and even if the trial court accepted his demand, defendant's speedy trial time had not yet run. The State asserted that the April 2, 2018, jury trial date was within 160 days from the date the defendant mailed his speedy trial demand, October 26, 2017. Kelley responded that, because the defendant was incarcerated, the defendant's speedy trial time was 120 days, but Kelley had no authority to support his position. The trial court denied the defendant's motion to dismiss and explained that the defendant's motion was premature because the defendant's speedy trial time had not yet run. The trial court stated that it would bring the defendant to trial within the 160 days of the defendant's request for a speedy trial.

¶ 11    On April 2, 2018, the defendant waived his right to a jury trial, and the case proceeded to a stipulated bench trial. The parties stipulated that Officer Jones would testify to the previously described events that occurred on May 6, 2017. The State also introduced dash camera footage from Officer Jones's vehicle and an audio recording of police radio traffic, both of which corresponded with the May 6, 2017, incident. The defense presented no evidence, but Kelley reasserted the defendant's contention that his right to a speedy trial had been violated because he had not been brought to trial within 120 days of his arrest. The trial court stated that the defendant's request for dismissal was denied and found the defendant guilty of two counts of aggravated fleeing or attempting to elude a peace officer. The trial court ordered a presentence investigation report to be prepared and set the matter for sentencing.

¶ 12    On May 31, 2018, the trial court sentenced the defendant to 30 months in IDOC, followed by one year of mandatory supervised release. Both convictions were ordered to run concurrent with each other, and concurrent with the defendant's sentence from Perry County. With the agreement of the State, the trial court gave the defendant sentencing credit for all of the time he was incarcerated, from his original arrest date of May 11, 2017, through May 31, 2018, even though the defendant was not in Randolph County's custody.

¶ 13    On June 28, 2018, the defendant filed a *pro se* motion to reconsider, alleging that "due process was not followed." The defendant argued that his right to a speedy trial was violated because he received sentencing credit for being continuously incarcerated. On September 10, 2018, the parties appeared before the trial court on the defendant's motion to reconsider. The defendant argued that his due process rights were violated "when it took 11 months to try [the defendant] instead of six." The State responded that it would stand on its previous argument made during the hearing on March 1, 2018. The trial court stated that it did not believe defendant's speedy trial or

6

due process rights were violated and denied the defendant's motion to reconsider. This appeal followed.

¶ 14                                          ANALYSIS

¶ 15    On appeal, the defendant raises three points of error. First, the defendant argues that Kelley's failure to revoke the defendant's bond, thus allegedly forfeiting his right to a speedy trial, constituted ineffective assistance of counsel. Defendant next alleges that Kelley suffered a conflict of interest because Kelley would have had to argue that the defendant's speedy trial right was violated due to Kelley's own ineffectiveness. Finally, the defendant contends that one of his convictions for aggravated fleeing or attempting to elude a peace officer should be vacated under the one-act, one-crime doctrine because both convictions were based on one continuous act. We disagree.

¶ 16    Claims of ineffective assistance of counsel may be raised on a direct appeal when the basis for the claim can be ascertained from the record. *People v. Veach*, 2017 IL 120649, ¶ 46; *People v. Watson*, 2012 IL App (2d) 091328, ¶ 21. In reviewing an ineffective assistance of counsel claim, we defer to the trial court's findings of fact unless they are against the manifest weight of the evidence but review the ultimate legal issue of whether counsel was ineffective *de novo*. *People v. Berrier*, 362 Ill. App. 3d 1153, 1166-67 (2006).

¶ 17    In determining whether trial counsel was ineffective, we apply the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted in *People v. Albanese*, 104 Ill. 2d 504, 626 (1984). Under *Strickland*, a defendant must show that trial counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *Albanese*, 104 Ill. 2d at 525. A reasonable probability that the outcome of the proceedings would

7

have been different is a probability sufficient to undermine confidence in the result of the proceedings. *People v. Colon*, 225 Ill. 2d 125, 135 (2007). A reviewing court is not required to consider whether trial counsel's performance was deficient before determining whether the defendant was prejudiced by counsel's alleged deficiencies because a claim of ineffective assistance of counsel fails if either prong of the *Strickland* test is not met. *People v. Perry*, 224 Ill. 2d 312 (2007).

¶ 18    Section 103-5(a) of the Code of Criminal Procedure of 1963 mandates that: "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant ***." 725 ILCS 5/103-5(a) (West 2016). Under subsection (a), the defendant's right to a speedy trial is automatic, and the State must bring the defendant to trial within 120 days. *People v. Staten*, 159 Ill. 2d 419, 424 (1994).

¶ 19    In contrast, section 103-5(b) provides that: "Every person on bail or recognizance shall be tried by the court having jurisdiction within 160 days from the date defendant demands trial unless delay is occasioned by the defendant ***." 725 ILCS 5/103-5(b) (West 2016). To invoke the 160-day period of subsection (b), defendants who are released on bail or recognizance must serve the State with a demand for a speedy trial. *Staten*, 159 Ill. 2d at 424. Here, the defendant posted bond after his first appearance in Randolph County. The defendant was then released from Randolph County's custody. Accordingly, the defendant no longer had an automatic right to a speedy trial and was required to file a motion demanding that he be brought to trial within 160 days.

¶ 20    Following his release from Randolph County, the defendant claims he received a phone call instructing him to return to the Perry County jail because Randolph County mistakenly released the defendant from confinement. The defendant alleged that he complied and returned to

8

Perry County's custody. A defendant who is released on bond for one charge, and who is subsequently arrested or returned to custody on a different charge, is not returned to custody on the first charge until his bond is withdrawn or revoked. *People v. Arnhold*, 115 Ill. 2d 379, 383 (1987). Once a defendant's bond is withdrawn or revoked, he is then considered in custody. *Id.* at 384. Therefore, even though the defendant returned to custody in Perry County, his bond in Randolph County was still in effect and he was not in simultaneous custody for his Perry County and Randolph County charges.

¶ 21　The record shows that the defendant did not make a demand for a speedy trial until November 2, 2017, while he was incarcerated in IDOC. Following the defendant's November 2, 2017, *pro se* filings, the warrant for his arrest was quashed, and he remained on bond in Randolph County. The record also shows, and the defendant does not dispute, that the defendant was tried within 160 days of his written demand for a speedy trial. Thus, no speedy trial violation occurred under section 103-5(b).

¶ 22　The defendant argues, however, that, had Kelley sought revocation of the defendant's bond, the 120-day period of section 103-5(a) would have applied to his case. The defendant assumes, therefore, that he would not have been brought to trial within 120 days and his charges in Randolph County would have been dismissed. It is, however, exceedingly speculative to conclude that the defendant would not have been brought to trial within 120 days of any date the defendant's bond may have been revoked. The defendant submits that we may not speculate what might have happened had his bond been revoked. We need not speculate, however, as the record refutes any such speculation.

¶ 23　The record shows that both the trial court and the State were well aware of the requirements of the speedy trial statute, and the defendant's trial was scheduled with the statute's time constraint

9

in mind. Had the defendant's bond been revoked, the trial court would have had 120 days from the date of any such revocation to schedule the defendant's trial. See 725 ILCS 5/103-5(a) (West 2016) ("The 120-day term must be one continuous period of incarceration. In computing the 120-day term, separate periods of incarceration may not be combined. If a defendant is taken into custody a second (or subsequent) time for the same offense, the term will begin again at day zero."). We find that the defendant is unable to demonstrate a reasonable probability that, had his bond been revoked, the defendant would have been tried outside the 120-day speedy trial period. Accordingly, the defendant cannot establish he was prejudiced by Kelley's alleged ineffective assistance. Because we find that the defendant's claim of ineffective assistance of counsel fails, his contention that Kelley operated under a conflict of interest is moot, and we need not address it.

¶ 24 The defendant next argues that one of his convictions for aggravated fleeing or attempting to elude a peace officer (625 ILCS 5/11-204.1 (West 2016)) must be vacated under the one-act, one-crime doctrine because both convictions were based on one continuous act of fleeing from Officer Jones. The defendant did not raise this claim in the trial court and requests that this court review his claim for plain error. The plain error rule allows a reviewing court to consider an error not properly preserved for appellate review when the evidence is closely balanced, or the error is so serious that the defendant was denied a fair trial. *People v. Harvey*, 211 Ill. 2d 368, 387 (2004). An alleged violation of the one-act, one-crime doctrine, and the potential for a surplus conviction and sentence, satisfies the second prong of the plain error rule because such a violation affects the integrity of the judicial process. *Id.* at 389. Therefore, we will consider the defendant's contention that his convictions for two counts of aggravated fleeing or attempting to elude a peace officer violate the one-act, one-crime doctrine. Alleged violations of the one-act, one-crime doctrine are subject to *de novo* review. *People v. Bush*, 2015 IL App (5th) 130224, ¶ 6.

¶ 25    Pursuant to the one-act, one-crime doctrine, a defendant cannot be convicted of more than one offense "carved from the same physical act." *People v. King*, 66 Ill. 2d 551, 566 (1977). In this sense, our supreme court defined an "act" as any overt or outward manifestation that will support a separate offense. *Id.* Where two offenses share a common act, multiple convictions are permissible if the defendant commits a second act which supports a second offense. *Bush*, 2015 IL App (5th) 130224, ¶ 7. Multiple convictions are improper, however, if the offenses are based on the same physical act. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). To sustain convictions where multiple offenses share a common act, the charging document must indicate the State's intent to treat the defendant's conduct as multiple acts. *People v. Shines*, 2015 IL App (1st) 121070, ¶ 44.

¶ 26    To determine whether a defendant's multiple convictions violate the one-act, one-crime doctrine, we follow a two-step analysis. Under *King*, a reviewing court must first determine whether a defendant committed multiple acts. *Rodriguez*, 169 Ill. 2d at 186. If the reviewing court determines that the defendant committed multiple acts, the court must then determine if any of the offenses are lesser included offenses. *Id.* In *King*, our supreme court stated that "when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." *King*, 66 Ill. 2d at 566.

¶ 27    Here, the record shows that the defendant committed multiple acts which support separate offenses. The State charged the defendant with two counts of aggravated fleeing or attempting to elude a peace officer, based upon the following acts: (1) the defendant's driving at a high rate of speed and (2) the defendant's refusal to obey multiple traffic control devices. The evidence presented in the stipulated bench trial showed that the defendant reached speeds of at least 21 miles

11

per hour over the legal speed limit and failed to stop for multiple stop signs. The trial court accepted the stipulated evidence, found the defendant guilty of both counts of aggravated fleeing or attempting to elude a peace officer, and entered concurrent sentences. Furthermore, neither of the defendant's convictions is a lesser included offense of the other. Thus, the defendant's convictions do not violate the one-act, one crime doctrine.

¶ 28     Our analysis in this case is analogous to the First District's decision in *People v. Shines*. In *Shines*, the defendant led police officers on a high-speed chase and failed to stop for multiple traffic control devices. *Shines*, 2015 IL App (1st) 121070, ¶¶ 7-8. The State charged the defendant, *inter alia*, with two counts of aggravated fleeing and or attempting to elude a peace officer. *Id.* ¶ 4. Following a trial, the defendant was found guilty of both offenses and argued on appeal that his convictions violated the one-act, one-crime doctrine. *Id.* ¶¶ 20, 41-46. The defendant claimed that the different acts giving rise to his two convictions were mere attendant circumstances or alternative theories of culpability for the same conduct. *Id.* ¶ 46. The First District found, as we do here, that, because the defendant committed multiple acts, his convictions did not violate the one-act, one crime doctrine. *Id.* ¶ 46.

¶ 29     The defendant contends that the aggravated fleeing or attempting to elude a peace officer statute creates a single offense which may be violated in a number of ways. The defendant argues that "the presence of two aggravating factors does not turn one flight into two crimes" but merely provides the State with alternative ways to elevate a misdemeanor crime to a felony. In making this argument the defendant relies on our supreme court's decision in *People v. Price*, 221 Ill. 2d 182 (2006). In *Price*, our supreme court restated its prior ruling that the theft statute (720 ILCS 5/16-1 (West 2002)) did not " 'undertake to create a series of separate offenses, but rather to create

12

a single offense of theft which may be performed in a number of ways.' " *Price*, 221 Ill. 2d at 189 (quoting *People v. Graves*, 207 Ill. 2d 478, 484 (2003)).

¶ 30 *Price* did not hold, however, that multiple convictions cannot arise from different subsections of the same statute. In *Price*, the defendants were charged, *inter alia*, with two counts of theft (720 ILCS 5/16-1(a)(1), (4) (West 2002)) for stealing the same " 'office-related property having a total value exceeding $300.' " *Price*, 221 Ill. 2d at 186. One count of theft charged the defendants with violating section 16-1(a)(1) of the statute, which provided that "one commits theft who knowingly '[o]btains or exerts unauthorized control over property of the owner.' " *Id.* at 189 (quoting 720 ILCS 5/16-1(a)(1) (West 2002)). The second count alleged the defendants also violated section 16-1(a)(4) of the statute, which provided that "one commits theft who '[o]btains control over stolen property knowing the property to have been stolen or under such circumstances as would reasonably induce him to believe that the property was stolen.' " *Id.* (quoting 720 ILCS 5/16-1(a)(4) (West 2002)). A jury found the defendants guilty of both counts and the trial court entered concurrent sentences on both counts. *Id.* at 188. On review, our supreme court determined that the defendants' two theft convictions were not legally inconsistent but could not stand under the one-act, one crime doctrine because the convictions were "for the same offense and [arose] from the same conduct." *Id.* at 194. Accordingly, our supreme court vacated one of the theft convictions for each of the defendants. *Id.* at 195.

¶ 31 Conversely, the defendant's convictions in the present case, while sharing the common act of refusing to stop at the direction of a police officer, are based upon separate acts—the defendant's high rate of speed and failure to stop for traffic control devices. The defendant's convictions are not, as was the case in *Price*, convictions for the same offense that arose from precisely the same

conduct. Therefore, we find that the defendant's convictions for two counts of aggravated fleeing or attempting to elude a peace officer and concurrent sentences were properly imposed.

¶ 32    For the foregoing reasons, we affirm the trial court's judgment and sentence.


¶ 33    Affirmed.

2020 IL App (5th) 180461
NO. 5-18-0461
IN THE
APPELLATE COURT OF ILLINOIS
FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Randolph County. |
| | ) | |
| v. | ) | No. 17-CF-78 |
| | ) | |
| CHARLES SCHAEFER, | ) | Honorable |
| | ) | Richard A. Brown, |
| Defendant-Appellant. | ) | Judge, presiding. |

**Rule 23 Order Filed:**    December 3, 2020
**Motion to Publish Granted:**    December 21, 2020
**Opinion Filed:**    December 21, 2020

**Justices:**    Honorable Judy L. Cates, J.

Honorable John B. Barberis, J., and
Honorable Milton S. Wharton, J.
Concur

**Attorneys**
**for**
**Appellant**
James E. Chadd, Appellate Defender, Ellen J. Curry, Deputy
Defender, Christina O'Connor, Assistant Appellate Defender,
Office of the State Appellate Defender, Fifth Judicial District, 909 Water
Tower Circle, Mt. Vernon, IL 62864

**Attorneys**
**for**
**Appellees**
Hon. Jeremy R. Walker, State's Attorney, Randolph County Courthouse,
Chester, IL 62233; Patrick Delfino, Director, Patrick D. Daly, Deputy
Director, Valerie A. Ozment, Staff Attorney, Office of the State's
Attorneys Appellate Prosecutor, 730 East Illinois Highway 15, Suite 2,
P.O. Box 2249, Mt. Vernon, IL 62864