NOTICE
Decision filed 02/16/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 180408-U

NO. 5-18-0408

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 17-CF-307 |
| | ) | |
| RODNEY E. MOORE, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Moore and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm in part the trial court's judgment where the defendant proceeded *pro se* at trial and fails to demonstrate ineffective assistance of counsel and vacate that portion of the trial court's judgment where the defendant's conviction for unlawful possession of a firearm with a defaced serial number violates the one-act, one-crime rule. We further find that all remaining issues raised on appeal were forfeited by the defendant for failing to make an objection at the time of the alleged errors and further failing to raise the issues in a written posttrial motion.

¶ 2    On May 4, 2018, after a jury trial, the defendant, Rodney E. Moore, was convicted of one count each of unlawful possession of a weapon by a felon in violation of section 24-1.1(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/24-1.1(a) (West 2016)) and unlawful possession of a firearm with a defaced serial number in violation of section 24-

1

5(b) of the Code (*id.* § 24-5(b)). On August 3, 2018, the defendant was sentenced to 10 years' imprisonment for the unlawful possession of a weapon by a felon count, to be served concurrently with 3 years' imprisonment for the unlawful possession of a firearm with a defaced serial number count, followed by 2 years of mandatory supervised release.

¶ 3     The defendant raises several issues on appeal. He argues that (1) the State committed misconduct during his grand jury proceedings; (2) his initial trial counsel was ineffective before being discharged; (3) the trial court judge and the State's Attorney wrongfully instructed the jury on the class nature or offense of the crime(s); (4) there was insufficient evidence to convict; (5) the unlawful possession of a weapon by a felon count should have been charged as a Class 3 felony as opposed to a Class 2 felony; and (6) his sentence for unlawful possession of a firearm with a defaced serial number violates the one-act, one-crime rule. For the following reasons, we vacate the defendant's conviction for unlawful possession of a firearm with a defaced serial number for violating the one-act, one-crime rule and order the defendant's mittimus to be amended accordingly, and affirm the trial court's judgment in all other aspects.

¶ 4                                    I. BACKGROUND

¶ 5     The defendant was charged by information on August 8, 2017, and subsequently by indictment on August 25, 2017, with one count each of unlawful possession of a weapon by a felon in violation of section 24-1.1 of the Code (*id.* § 24-1.1(a)) and unlawful possession of a firearm with a defaced serial number in violation of section 24-5(b) of the Code (*id.* § 24-5(b)). Both charges related to conduct, the defendant's possession of a single firearm, that allegedly occurred on August 3, 2017.

2

¶ 6        On August 29, 2017, the State filed a motion for destructive testing asking the trial court to enter an order allowing the State to perform DNA testing on a firearm allegedly possessed by the defendant and a motion for disclosure to the prosecution seeking to obtain a buccal swab (DNA) from the defendant. Over the defendant's objections, the trial court granted both of the State's motions on September 5, 2017. At the pretrial hearing on September 13, 2017, after alleging that his counsel would not file "motions" at his request, the defendant discharged his appointed counsel and elected to proceed *pro se*.

¶ 7        Thereafter, on September 20, 2017, October 13, 2017, October 24, 2017, and December 1, 2017, the defendant filed several different *pro se* motions to dismiss the charges against him, arguing that the evidence was insufficient. In its response to each of the defendant's motions, the State pointed out that motions to dismiss charges are governed by section 114-1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-1(a) (West 2016)), which enumerates the proper grounds for the dismissal of an indictment, information, or complaint. The State further pointed out that the Illinois Supreme Court has stated that "[a] defendant may not challenge an indictment on the ground that it is not supported by adequate evidence." *People v. Creque*, 72 Ill. 2d 515, 527 (1978). "Guilt or innocence is to be determined at trial." *Id.*

¶ 8        The trial court conducted several hearings on the defendant's *pro se* motions to dismiss the charges on October 10, 2017, October 13, 2017, November 15, 2017, December 1, 2017, and December 8, 2017. At each hearing, the trial court denied the defendant's motions, stating that it is the role of the jury to decide whether the evidence is sufficient to

3

convict, and that the defendant's arguments contained in the motions were not a proper basis for a motion to dismiss.

¶ 9     On April 24, 2018, the trial court appointed attorney Phillip Butler as stand-by counsel for the defendant. On May 1, 2018, before the defendant's trial began, the trial court clarified that it appointed attorney Butler to assist the defendant if the defendant requested it, but that attorney Butler would not be representing the defendant. The trial court further confirmed with the defendant that he would be representing himself; that the defendant had waived his right to counsel knowingly, voluntarily, and understandingly; that the defendant's waiver of counsel was not coerced; that the defendant had demonstrated to the court that he had the ability to understand the proceedings; and that the defendant understood the significance and consequences of his decision to proceed *pro se*.

¶ 10    A jury trial was conducted on May 1, 2018, through May 4, 2018, and the defendant was represented *pro se* with the assistance of stand-by counsel. At trial, Detective Kevin Jackson with the Mt. Vernon Police Department's narcotics division testified that on August 3, 2017, a narcotics investigation led him to a home located in Mt. Vernon, Illinois. Detective Jackson testified that when he arrived at the home, he attempted to make contact by knocking on the door twice. According to Detective Jackson's testimony, he heard movement inside the home before he heard a female's voice, later identified as Se'Arra Alexander, ask who it was. Detective Jackson testified that he identified himself and then Alexander opened the door. Detective Jackson explained to Alexander the purpose of the investigation and then asked if he and Sergeant Koontz could come inside to speak further.

4

Alexander invited them both inside the residence. Detective Jackson testified that, thereafter, Alexander signed a consent to search the residence form.

¶ 11 Detective Jackson further testified that after he received the consent to search the home, he asked Alexander if anyone else was present in the home for officer safety reasons. Detective Jackson then learned that the defendant and a person by the name of Katelynn Aultem were also present inside the home. Detective Jackson explained that he and Sergeant Koontz attempted to gather everyone in the living room area so that they could inform everyone about what was going to happen with respect to the search and so that everyone would be in one area and could be watched. However, the defendant was in the bathroom at this time and did not come out right away, but eventually exited the bathroom and joined the others in the living room area.

¶ 12 Detective Jackson testified that he and Sergeant Koontz then attempted to identify all of the people in the home, but the defendant refused to provide his name. According to Detective Jackson's testimony, during his contact with the defendant, he noticed a document that had Rodney Moore's name on it, so he requested his office to look up that name to see if he had any active warrants. Detective Jackson was informed that the defendant had a warrant for failing to appear in court. Consequently, the defendant was arrested and transported to jail.

¶ 13 Detective Jackson further testified that during the search of the home, and specifically, in one of the bedrooms, officers located a trash bag with what appeared to be male clothes in it, and a red duffel bag that had a tag with the defendant's name written on it. According to Detective Jackson's testimony, he located a handgun underneath the trash

5

bag. Detective Jackson stated that he made contact with Sergeant Koontz and together they contacted the State's Attorney's office, and the decision was made to obtain a search warrant for the home. Detective Jackson testified that when the handgun was collected, the serial number had been scratched off. Detective Jackson further testified that both the handgun, and the defendant's fingerprints for comparison, were submitted for testing.

¶ 14 During the defendant's cross-examination of Detective Jackson, Detective Jackson testified that the reason the police came to the home that day was due to a narcotics investigation on Se'Arra Alexander, whose name was solely on the lease of the home, and on her boyfriend, Dewayne Moore—the defendant's brother. According to Detective Jackson's testimony, even though it was Alexander's home, she was not charged in connection with the firearm because the firearm was found with the defendant's property in a bedroom that had nothing else in it other than a bed and some toys in the closet. Detective Jackson testified that in addition to that, Dewayne Moore called Alexander from jail the day before the search of the home occurred and told her that he "got that pole for my brother." Detective Jackson explained that "pole" is a common street name for a gun. According to Detective Jackson's testimony, in addition to the narcotics-related investigation, this telephone call relating to a "pole" was another reason that led police to Alexander's home the next day. Detective Jackson further testified that "weeks or months" after the search of the home, Alexander had indicated to Detective Jackson that the firearm was Dewayne's, but that he had given it to the defendant "to do some work with." Alexander also told the police that the defendant had been living at her home for

approximately two months, and that the plastic bag of clothes, and all of the other items around it, belonged to the defendant.

¶ 15　On recross-examination, Detective Jackson clarified that during Dewayne's conversation with Alexander while in jail, Dewayne had asked Alexander if "his brother," purportedly the defendant, was going to help him put money on his books, and then he got upset and stated, "I got him a pole. What's he doing for me?" Thereafter, the State introduced, without objection, a certified copy of the defendant's felony conviction for aggravated unlawful use of a weapon from the circuit court of Marion County, Illinois.

¶ 16　Expert witness Brian Hapack, a forensic biologist DNA analyst with the Illinois State Police crime laboratory, testified that he tested DNA swabbings from a magazine in the recovered firearm and detected "a low level mixture of DNA profiles that [were] unsuitable for comparison." Hapack explained that it is not unusual to have comparisons that are unsuitable for comparisons, and what this means is that the DNA that was there was of a very small amount, and was originating from at least more than one individual. According to Hapack's testimony, this is "not an uncommon result that we get with items that would just merely be handled. The skin cells on your hand do not contain a lot of DNA, and handling something does not transfer a large amount of DNA ***." Hapack further testified that based on his test, he was unable to eliminate the defendant as having handled the firearm.

¶ 17　Expert witness Melissa Gamboe, a fingerprint examiner for the Illinois State Police forensic science laboratory, testified that the recovered firearm did not contain any fingerprints that were suitable for comparison. Gamboe explained that this is not unusual

7

due to the way firearms are carried, stating that "a lot of times they are in a waistband, a pocket, or a holster. Some people even wrap theirs in things." Gamboe further explained that sometimes, firearms have a grip with a "gnarled" surface, which is not a good surface for a fingerprint to be deposited because "the smoother the surface, the better." Gamboe testified that, additionally, if a firearm has been cleaned, they tend to have oil on them, which is also not ideal when looking for latent fingerprints.

¶ 18   Leon Kemmerling testified for the defendant that he used to live at Alexander's home for about two months with her and Dewayne Moore, and that during that time, he had never heard of or observed a firearm being present in the home. On cross-examination, Kemmerling testified that he had lived with Alexander and Dewayne "around May to June" 2017, was currently in jail on pending felony retail theft charges, is a convicted felon, and that he had been in and out of jail since he was 15 years old.

¶ 19   The defendant testified that on the date of his arrest, he was dropped off at his sister's home. The defendant's sister was there using the bathroom, so he walked over to Alexander's home, which was situated diagonally behind his sister's home, to use her bathroom. Five minutes later, while the defendant was still in the bathroom, officers arrived at the home, and he was subsequently arrested on a warrant for failing to appear on a pay or appear court date. The defendant testified that he had no recollection of the recovered firearm, that it was not on his property, and that he had no control over what was going on in someone else's home. The defendant denied that the red duffel bag was his, testifying that he had never seen the bag before, and further denied that he had been staying at Alexander's home any more than one day prior to his arrest.

¶ 20 During deliberations, the jury sent out two notes. The first note asked what day of the week August 3, 2017, was. After some discussion, the parties agreed to send back a note that said, "August 3, 2017 was a Thursday. Judge Crisel." About two hours later, the jury sent out a second note stating, "Please send in (or have a lawyer explain in laymen's terms) the meaning of this instruction. This is critical because it bears on the meaning of 'KNOWS' in regards to this case." The trial court indicated that the instruction the jury was referring to was Illinois Pattern Jury Instructions, Criminal, No. 5.01B, the instruction defining knowledge, knowingly or acting. Thereafter, the trial court indicated, "As you all know, the Court can't monkey with the instructions, and so I propose the following response: You have all the instructions before you allowed by law as written. Judge Crisel." Neither party objected to this response, and it was provided to the jury.

¶ 21 A short time later, the jury returned guilty verdicts on both counts of unlawful possession of a weapon by a felon and unlawful possession of a firearm with a defaced serial number. The trial court sentenced the defendant to 10 years' imprisonment for the unlawful possession of a weapon by a felon count, to be served concurrently with 3 years' imprisonment for the unlawful possession of a firearm with a defaced serial number count, followed by 2 years of mandatory supervised release. No posttrial motions were filed by the parties.

¶ 22                                     II. ANALYSIS

¶ 23 The first issue we must address is that the defendant's *pro se* brief fails to comply with many of the requirements of Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020). Rule 341 governs the content of appellate briefs, and is made applicable to criminal cases by

9

Illinois Supreme Court Rule 612(b)(9) (eff. July 1, 2017). For example, the defendant's statement of facts does not set forth "the facts necessary to an understanding of the case." Ill. S. Ct. R. 341(h)(6). Moreover, much of his argument section contains conclusory, vague allegations with little or no citations to the record on appeal and sporadic citations to legal authority presumably supporting his claims. See Ill. S. Ct. R. 341(h)(7). The supreme court rules are not mere suggestions, and we may strike a brief for failure to comply with the rules. See *People v. Williams*, 2020 IL App (3d) 180024, ¶ 25. Further, the defendant's failure to support his contentions with citation to legal authority or coherent argument forfeits review of his claims. Ill. S. Ct. R. 341(h)(7); *People v. Sprind*, 403 Ill. App. 3d 772, 778-79 (2010). Nevertheless, we have the benefit of the State's cogent brief. As such, as the issues are evident and the merits of the appeal can be readily ascertained from the record on appeal, we will proceed to the merits of the appeal. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001).

¶ 24    The next issue we must address is the defendant's failure to file a posttrial motion. It is well-settled that an issue is forfeited on appeal unless a party makes an objection at the time of a purported error and specifically raises the issue in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). The purpose of this rule is to encourage parties to raise their concerns in the trial courts so that courts have an opportunity to correct their errors. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14. Here, the defendant failed to file a posttrial motion raising any of the issues he now brings on appeal. We note, however, that a claim of ineffective assistance of counsel may be raised for the first time on appeal when the basis for the claim can be ascertained from

10

the record (*People v. Schaefer*, 2020 IL App (5th) 180461, ¶ 16), and that forfeiture is a limitation on the parties and not on this court (*People v. Jackson*, 2017 IL App (1st) 151779, ¶ 20; *People v. Holmes*, 2016 IL App (1st) 132357, ¶ 65). Thus, this court may choose to overlook the forfeiture, if necessary, in order to obtain a just result or maintain a sound body of precedent. *Holmes*, 2016 IL App (1st) 132357, ¶ 65.

¶ 25    Consequently, we find that the defendant has forfeited his claims that the State committed misconduct during his grand jury proceedings; that the trial court judge and State's Attorney wrongfully instructed the jury on the class nature or offense of the crime(s); that there was insufficient evidence to support his convictions; and that the unlawful possession of a weapon by a felon count should have been charged as a Class 3 felony as opposed to a Class 2 felony, for failing to make an objection at the time of the alleged errors and further failing to raise the issues in a written posttrial motion. We will address the defendant's claim of ineffective assistance of counsel and, in order to obtain a just result, choose to overlook the forfeiture regarding the defendant's claim that his sentence violated the one-act, one-crime rule.

¶ 26                    A. Ineffective Assistance of Trial Counsel

¶ 27    The defendant argues that his trial counsel was ineffective for "failure to file motions in a timely manner which resulted in prejudice to defendant justice process," and that his trial counsel had a conflict of interest because public defender Scott Quinn "represented co-defendant or Dewayne Moore." The defendant maintains that due to his counsel's failure to file for dismissal of the offenses charged and a motion to stipulate his prior conviction, it resulted in cruel and unusual punishment, a sixth amendment

11

constitutional violation, and a conflict free interest in representation by counsel. We will address each issue in turn.

¶ 28 In criminal prosecutions, a defendant has a constitutional right to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *People v. Moore*, 2020 IL 124538, ¶ 28. Claims alleging ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Domagala*, 2013 IL 113688, ¶ 36. Whether counsel was ineffective is reviewed *de novo*. *People v. Max*, 2012 IL App (3d) 110385, ¶ 64.

¶ 29 To establish ineffective assistance of counsel, the defendant must prove (1) that counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) that he suffered prejudice. *Strickland*, 466 U.S. at 687. A defendant's failure to satisfy either prong of the *Strickland* test is fatal to his claim of ineffective assistance of counsel. *People v. Albanese*, 104 Ill. 2d 504, 527 (1984). Defense counsel's conduct is presumed to fall within the wide range of professionally reasonable assistance. *People v. Rodriguez*, 364 Ill. App. 3d 304, 312 (2006). Furthermore, there is a strong presumption that counsel's action or inaction was a matter of trial strategy (see *People v. Evans*, 186 Ill. 2d 83, 93 (1999)), and matters of trial strategy will not support a claim of ineffective assistance of counsel unless counsel's strategy is so unsound that he entirely fails to conduct any meaningful adversarial testing of the State's case (see *People v. Patterson*, 217 Ill. 2d 407, 441 (2005)). To establish prejudice, the defendant must show that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 687. "A

12

reasonable probability is a probability sufficient to undermine confidence in the outcome, namely, that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair." *People v. Enis*, 194 Ill. 2d 361, 376 (2000).

¶ 30    First of all, the defendant was appointed assistant public defender Edwin Anderson on August 10, 2017, and subsequently discharged said counsel a month later on September 13, 2017, after alleging that attorney Anderson would not file "motions" at his request. The defendant then elected to proceed *pro se*. Thereafter, on September 20, 2017, October 13, 2017, October 24, 2017, and December 1, 2017, the defendant filed several different motions to dismiss the charges, arguing that the evidence was insufficient. In its response to each of the defendant's motions, the State pointed out that motions to dismiss charges are governed by section 114-1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-1(a) (West 2016)), which enumerates the proper grounds for the dismissal of an indictment, information, or complaint. The State further pointed out that the Illinois Supreme Court has stated that "[a] defendant may not challenge an indictment on the ground that it is not supported by adequate evidence." *People v. Creque*, 72 Ill. 2d 515, 527 (1978). "Guilt or innocence is to be determined at trial." *Id*.

¶ 31    The trial court conducted several hearings on the defendant's *pro se* motions to dismiss the charges against him on October 10, 2017, October 13, 2017, November 15, 2017, December 1, 2017, and December 8, 2017. At each hearing, the trial court denied the defendant's motions, stating that it is the role of the jury to decide whether the evidence is sufficient to convict, and that the defendant's arguments contained in the motions were not a proper basis for a motion to dismiss. As such, even if attorney Anderson had filed a

motion to dismiss the offenses charged on behalf of the defendant before counsel was discharged, we find that counsel's performance was not deficient but, rather, reasonable trial strategy since such motions would have no merit. Because the defendant has failed to establish the first prong of the *Strickland* test, we decline to address the prejudice prong here.

¶ 32 The defendant also argues that counsel's failure to stipulate to his felony status was in error and, as a result, the proceedings were unreliable and prejudicial. The right to represent oneself in a criminal proceeding is constitutionally guaranteed. *People v. Scott*, 194 Ill. App. 3d 634, 646 (1990); *Faretta v. California*, 422 U.S. 806, 813-14 (1975). However, a defendant who knowingly and voluntarily chooses to represent himself cannot then complain on appeal that his self-representation constituted a denial of effective assistance of counsel or a fair trial, even where he conducts his defense to his own detriment. *People v. Graves*, 134 Ill. App. 3d 473, 477 (1984); *People v. O'Neal*, 62 Ill. App. 3d 146, 150 (1978). Moreover, if a defendant's self-representation is less effective than if he would have retained counsel, it is attributable to his decision to proceed without an attorney. *Scott*, 194 Ill. App. 3d at 646. "To hold otherwise would make a mockery of judicial process, since a defendant could elect to defend himself and then secure a reversal because of his own incompetency." *People v. Richardson*, 17 Ill. 2d 253, 260 (1959).

¶ 33 Here, the defendant discharged attorney Anderson and elected to proceed *pro se* on September 17, 2017, which was over seven months before the trial began on May 1, 2018, and continued representing himself throughout his trial with attorney Butler as stand-by counsel. At any point in time before or even during his trial, the defendant could have

offered to stipulate to his prior felony conviction, but he chose not to do so. Moreover, the trial court admonished the defendant at his September 13, 2017, pretrial hearing that if he wished to proceed *pro se*, he would not be allowed to complain on appeal about the competency of his representation "for obvious reasons." The trial court further indicated to the defendant that "[t]he effectiveness of your defense may well be diminished by your dual role of attorney and accused. You will receive no special consideration from the court. You will be on equal footing with the other side." Thereafter, the defendant indicated that he understood. Further, on the morning that trial began, May 1, 2018, the trial court stated:

"[T]he Court wants to make a record clean and clear on this, too, that [the defendant] has been representing himself in this case for some time, and that the Court did give him the admonitions. I think I've done that more than once. He has filed a number of motions, *pro se* motions, throughout the case. He has convinced me that he is waiving his right to counsel knowingly, voluntarily and understandingly. He has also shown me he has the ability to understand the proceedings. He knows the significance and consequences of his decision. I think we've gone over that a number of times, and that his waiver of counsel was not coerced.

[Defendant], I think at the final pretrial, requested standby counsel, and I did appoint Mr. Butler as standby counsel. Not as counsel for him but as standby counsel, and to make it clear what the role of Mr. Butler is to everyone is that he is here to assist you, [defendant], if you request it, if and when you request him to assist you, but he is not here to represent you. He is simply assisting you in your representation of yourself. Do you understand that?"

15

The defendant indicated that he understood. Consequently, because the defendant chose to represent himself, and did so knowingly, voluntarily, and understandingly, he must now bear the consequences of his decision. As such, the defendant's claim of ineffective assistance of counsel fails to meet the first prong of the *Strickland* analysis in that counsel's performance was not deficient, as it did not fall below an objective standard of reasonableness, and therefore must be rejected. As a final note, because we decline to find that the defendant's counsel was ineffective, we further reject the defendant's argument that his counsel's failure to file for dismissal of the offenses charged and a motion to stipulate his prior conviction resulted in cruel and unusual punishment.

¶ 34    Additionally, we note that the defendant's brief is unclear about whether he is alleging ineffective assistance of counsel with respect to his initial trial counsel, attorney Edwin Anderson, or his stand-by counsel, attorney Phillip Butler. Claims of ineffective assistance of stand-by counsel are also subject to the standard set forth in *Strickland*, 466 U.S. at 687. *People v. Simpson*, 204 Ill. 2d 536, 563 (2001). Stand-by counsel may assist a *pro se* defendant " 'in overcoming routine procedural or evidentiary obstacles to the completion of some specific tasks, such as introducing evidence or objecting to testimony, that the defendant has clearly shown he wishes to complete' " and may also help " 'ensure the defendant's compliance with basic rules of courtroom protocol and procedure.' " *Id*. at 562 (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984)). However, the trial court has wide discretion to appoint stand-by counsel for such advisory or other limited purposes and to establish the extent and nature of stand-by counsel's involvement. *People v. Redd*, 173 Ill. 2d 1, 38 (1996).

¶ 35 As discussed above, the trial court here described the role of stand-by counsel, stating that he appointed attorney Butler to assist the defendant, if and when the defendant requested assistance, and not to represent the defendant. The defendant indicated that he understood. As such, the record reveals that everyone involved in this case understood that stand-by counsel's role here was not one of active participation in preparing or presenting the defendant's legal defense, nor was the defendant under this belief. The responsibility of preparing a legal defense remained on the defendant throughout the trial and sentencing. Consequently, we reject the defendant's ineffective assistance of counsel argument to the extent that the defendant may be referring to stand-by counsel, *i.e*., attorney Butler.

¶ 36 Next, the defendant argues that his trial counsel was ineffective because he had a conflict of interest since assistant public defender Scott Quinn "represented co-defendant or Dewayne Moore." Again, the defendant was appointed attorney Anderson on August 10, 2017. At his pretrial hearing on September 13, 2017, the defendant discharged attorney Anderson, and elected to proceed *pro se*, and was represented at trial *pro se* with the assistance of stand-by counsel, attorney Butler, who was appointed on April 24, 2018. At no point in time did assistant public defender Scott Quinn represent the defendant in this case, nor is there anything in the record that indicates who may have represented Dewayne Moore in any case, related or otherwise. Further, even if Dewayne Moore had been represented by another member of the public defender's office in some capacity at the time that the defendant's case was progressing, the Illinois Supreme Court has declined to adopt a *per se* rule finding a conflict of interest where different assistant public defenders

17

represent codefendants in a case. *People v. Cole*, 2017 IL 120997, ¶ 38. Accordingly, we reject the defendant's conflict of interest argument.

¶ 37    Finally, we note that the defendant contends that the trial court should have accepted his stipulation to his prior felony conviction rather than admitting evidence of his aggravated unlawful use of a weapon conviction. The record is devoid, however, of any attempt by the defendant offering to stipulate to his prior felony conviction. Thus, there was nothing for the trial court to accept. Moreover, a *pro se* defendant's inability to competently represent himself does not invest the court with a duty to intervene and assist in the defense. *People v. Hudson*, 86 Ill. App. 3d 335, 340 (1980). The defendant was adamant that he wanted to represent himself, and indicated that he understood the consequences numerous times. Accordingly, we reject the defendant's argument that the trial court should have accepted his stipulation to his prior felony conviction where there was no stipulation offered and no duty on the trial court to intervene and assist in the defendant's defense.

¶ 38                    B. One-Act, One-Crime Rule

¶ 39    The defendant appeals his convictions and sentence for the offenses of unlawful possession of a weapon by a felon and unlawful possession of a firearm with a defaced serial number, arguing that his conviction for unlawful possession of a firearm with a defaced serial number violates the one-act, one-crime rule. As stated earlier, this court has chosen to forgo the defendant's forfeiture of this claim for failing to raise it in a posttrial motion, given the seriousness of the claim and the potential for an unjust result (see *Holmes*, 2016 IL App (1st) 132357, ¶ 65). Moreover, the State acknowledges that the

defendant's convictions are based on a single act of possession of a firearm and concedes that the less serious conviction of unlawful possession of a firearm with a defaced serial number must be vacated. We agree.

¶ 40    The one-act, one-crime rule prohibits convictions for multiple offenses based on the same single physical act. *People v. Miller*, 238 Ill. 2d 161, 165 (2010); *People v. King*, 66 Ill. 2d 551, 566 (1977). Pursuant to the one-act, one-crime rule, a trial court should impose a sentence on the more serious offense and vacate the less serious offense. *People v. Smith*, 233 Ill. 2d 1, 20 (2009); *People v. Artis*, 232 Ill. 2d 156, 170 (2009). Whether a conviction violates the one-act, one-crime rule is a question of law that we review *de novo*. *People v. Robinson*, 232 Ill. 2d 98, 105 (2008); *People v. Daniels*, 187 Ill. 2d 301, 307 (1999). In making that determination, the Illinois Supreme Court has laid out a two-step analysis. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). First, this court must determine whether the defendant's conduct consisted of a single physical act or separate acts. *Id.* If it is established that the defendant committed multiple acts, then this court moves to the second step and determines whether any of the offenses are lesser-included offenses. *Id.* If there are no lesser-included offenses, then multiple convictions are proper. *Id.*

¶ 41    As such, we must first determine whether the defendant's conduct consisted of separate physical acts or a single physical act. The defendant was convicted of unlawful possession of a weapon by a felon in violation of section 24-1.1 of the Code (720 ILCS 5/24-1.1(a) (West 2016)) and unlawful possession of a firearm with a defaced serial number in violation of section 24-5(b) of the Code (*id.* § 24-5(b)). It is the defendant's argument that both convictions were based on the single act of possession of a firearm. The

definition of an "act," as stated in *King*, is "any overt or outward manifestation which will support a different offense." *King*, 66 Ill. 2d at 566. In this case, there was only one firearm recovered from Alexander's home, and the firearm was found with the defendant's property in a bedroom that had nothing else in it other than a bed and some toys in the closet. Accordingly, we agree that the defendant's two convictions were based on the single physical act of possessing the one recovered firearm.

¶ 42 Thus, the defendant's Class 3 felony conviction for unlawful possession of a firearm with a defaced serial number should have merged into the Class 2 felony of unlawful possession of a weapon by a felon for sentencing purposes and its attendant, concurrent 10-year prison sentence. Pursuant to Illinois Supreme Court Rule 615(b) (eff. Jan. 1, 1967), this court may amend the judgment to reflect this merger. Accordingly, we vacate the defendant's conviction for unlawful possession of a firearm with a defaced serial number and direct the trial court of Jefferson County to amend the defendant's mittimus by deleting the vacated unlawful possession of a firearm with a defaced serial number conviction and the sentence related thereto. We affirm the trial court's judgment in all other aspects.

¶ 43                              III. CONCLUSION

¶ 44 For the foregoing reasons, we vacate the defendant's conviction for unlawful possession of a firearm with a defaced serial number for violating the one-act, one-crime rule and order the defendant's mittimus to be amended accordingly. We further affirm the trial court's judgment in all other aspects.

¶ 45 Affirmed in part and vacated in part with directions.