# Illinois Official Reports

## Supreme Court

---

### *People v. Moore*, 2020 IL 124538

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LESLIE MOORE, Appellant. |
| Docket No. | 124538 |
| Filed | January 24, 2020 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Will County, the Hon. Edward A. Burmila Jr., Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, State Appellate Defender, Thomas A. Lilien, Deputy Defender, and Yasemin Eken, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Elgin, for appellant. |
| | Kwame Raoul, Attorney General, of Springfield (Jane Elinor Notz, Solicitor General, and Michael M. Glick and Richard J. Cook, Assistant Attorneys General, of Chicago, of counsel), for the People. |

Justices     JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Burke and Justices Thomas, Garman, Karmeier, Theis, and Neville concurred in the judgment and opinion.

**OPINION**

¶ 1  Defendant, Leslie Moore, appeals his conviction in Will County for unlawful possession of a weapon by a felon. 720 ILCS 5/24-1.1(a) (West 2012). The issue before this court is whether defense counsel was ineffective for failing to stipulate to defendant's felon status, thereby allowing the jury to consider highly prejudicial evidence that defendant's prior conviction was for murder. If so, we must consider whether there is a reasonable probability that the result of defendant's trial would have been different. The appellate court affirmed defendant's conviction in an unpublished decision. 2018 IL App (3d) 150736-U. We granted defendant's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. July 1, 2018). We now reverse and remand for further proceedings.

¶ 2             BACKGROUND

¶ 3  In May 2013, defendant was charged with unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2012)), stemming from a traffic stop in Joliet. His prior felony was a 1990 murder conviction. He completed his prison sentence for murder in 1998.

¶ 4  Before jury selection, the trial court asked the prosecutor whether defendant's prior conviction for murder was "part of the proof beyond a reasonable doubt or a sentencing issue." The prosecutor replied, "It's part of proof beyond a reasonable doubt." The following discussion then occurred:

"THE COURT: I am going to advise the jury of the nature of the conviction or just the defendant is convicted?

[ASSISTANT STATE'S ATTORNEY] HARVEY: I believe the nature of the conviction is what's told to the jury.

THE COURT: Mr. Ooink [(defense counsel)], you agree with that?

[DEFENSE COUNSEL] OOINK: Yes.

THE COURT: That's my understanding of the law just so the record is clear."

¶ 5  During defendant's jury trial, the trial court informed the prospective jurors:

"[T]he indictment in the case reads as follows: It's alleged on May 16, 2013, that [defendant] committed the offense of unlawful use of a weapon by a felon and that he, being a person who had been previously convicted of a felony, and that was a murder, he knowingly possessed on or about his person or on his land or his own abode or fixed place of business possessed a cobra .38 caliber handgun."

¶ 6  The arresting officer, Will County Sheriff's Deputy Thomas Hannon, testified that on May 16, 2013, he was on patrol and parked his marked squad car on East Zarley Boulevard in Joliet. Deputy Hannon observed a car approach the intersection at Chicago Street and Zarley Boulevard. Although the driver activated his turn signal when he reached the stop sign, he did

- 2 -

not do so within 100 feet of turning as required by law. As Deputy Hannon started to follow the car for this traffic infraction, he noticed that the driver was driving 60 miles per hour in a 40-mile-per-hour zone.

¶ 7     Deputy Hannon activated his lights and conducted a traffic stop on the car, driven by defendant. Deputy Hannon said that, when he pulled up behind the car, he saw defendant "dip" his right hand or shoulder toward the center console. When Deputy Hannon approached the car, defendant raised his hands in the air. According to Deputy Hannon, defendant appeared nervous, his hands were shaking, and he was sweating.

¶ 8     Deputy Hannon testified that he advised defendant of his traffic infractions and told him to put his hands down and "relax." He asked defendant for his driver's license and proof of insurance. Deputy Hannon then returned to his squad car and verified that defendant's license was valid and the car was registered to him.

¶ 9     When Deputy Hannon returned to defendant's car, he observed that defendant's hands were still shaking, he was sweating, and he was still acting nervous. Deputy Hannon asked defendant why he was so nervous but could not recall how defendant responded. Deputy Hannon then ordered defendant out of the car and directed him to stand behind it and in front of the squad car. Deputy Hannon again asked why defendant was so nervous and why he raised his hands when Deputy Hannon first made contact with him. According to Deputy Hannon, defendant said he had a loaded firearm in the car's front center console. For safety reasons, Deputy Hannon handcuffed defendant and called for backup.

¶ 10     Deputy Hannon testified that Deputy Michael Ambrosini arrived a few minutes later. Deputy Hannon searched defendant's car, opened the front center console, and found a silver, loaded .38-caliber Cobra firearm. A criminal background check showed that defendant had a prior felony conviction. Deputy Hannon arrested defendant for unlawful possession of a weapon by a felon. Deputy Hannon did not request the gun be tested for fingerprints because defendant told him the gun was in the car.

¶ 11     Deputy Hannon identified "State Exhibit 1" as a video recording of the traffic stop. Deputy Hannon's car was equipped with video equipment, but the exterior audio component was not functioning. The video was played for the jury. Contrary to Deputy Hannon's testimony, the video showed Deputy Ambrosini retrieved the gun from the car, not Deputy Hannon. Deputy Hannon explained that he initially found the gun but asked Deputy Ambrosini to retrieve the gun because he did not know how to unload it.

¶ 12     On cross-examination, Deputy Hannon admitted that the video did not show defendant dipping his right shoulder down during the traffic stop. Deputy Hannon stated that defendant's movement was not accurately portrayed due to the video's poor quality. Also, on cross-examination, Deputy Hannon indicated that he had provided the State with both a video recording and an exterior audio recording in other cases.

¶ 13     The State moved to admit a certified copy of defendant's prior conviction, and defense counsel had "no objection." The State told the jury that defendant was convicted of murder in 1990.

¶ 14     Sherry Walls testified for the defense. Sherry lived in Joliet at the time of the offense. She and defendant attended high school together and were best friends. On May 15, 2013, Sherry used defendant's car to move some belongings from her Calumet Park home to her new address at 201 West Zarley Boulevard in Joliet, where her daughter and son-in-law lived. After

defendant picked her up, Sherry dropped him off at his house and went to her Calumet Park address. Sherry picked up some clothes and her two guns, a "Cobra" and a ".380." She put the .380 in the glove compartment and the Cobra in the center console of defendant's car.

¶ 15    Sherry picked up defendant from his home, dropped him off at her daughter's home, and then continued using his car to run errands. When Sherry returned, defendant and her son-in-law helped her carry groceries upstairs to the apartment. Sherry grabbed her purse and ran to use the bathroom. The next day, she looked in her purse and saw that she only had the .380 gun. Sherry testified that she did not tell defendant that she left the other gun in his car.

¶ 16    Sherry testified that she purchased the Cobra on September 27, 2010. At trial, she identified the receipt for that gun purchase. The receipt bore her signature and the gun's serial number. She also identified the gun that the police retrieved from defendant's car as the gun she purchased. The serial number on her receipt matched the serial number on the gun found in defendant's car.

¶ 17    Defendant testified that he was 45 years old and lived in Chicago with his wife of 16 years. They had a 27-year-old son. Defendant has worked at Jewel warehouse in Melrose Park in the sanitation building maintenance department for 14 years.

¶ 18    Defendant testified that, on May 15, he loaned his car to Sherry Walls to move some things from her old address. She picked him up, and they went back to her home at 201 West Zarley Boulevard. Sherry left in defendant's car. When she returned, defendant and Sherry's son-in-law went downstairs to help her carry things into the house. He did not know that Sherry had put her two guns in his car.

¶ 19    The next day, at around 1:15 a.m., defendant was driving his car and approached a stop sign at Chicago Street and Zarley Boulevard. He signaled and turned left onto Chicago Street. He saw police lights behind him and immediately pulled over. When Deputy Hannon approached him, defendant had his hands on the steering wheel at positions "10 and 2." He did not move toward the center console, nor was he nervous, shaking, or sweating.

¶ 20    Defendant rolled down his window and gave Deputy Hannon his driver's license, proof of insurance, and registration. Deputy Hannon returned defendant's documents and then asked what defendant was doing in Joliet. Defendant explained that he had just left his friend's home after watching the Oklahoma City Thunder game.

¶ 21    Deputy Hannon told defendant to get out of the car and directed him to the back of the car. Deputy Hannon asked defendant why he was acting nervous, and defendant denied being nervous. Deputy Hannon again asked defendant what he was doing on Zarley Boulevard and then asked defendant if he had any weapons or drugs. Defendant said he did not and repeated where he had been. Defendant testified that he never told Deputy Hannon there was a gun in the center console of his car.

¶ 22    Deputy Hannon handcuffed defendant and said he was doing it for safety reasons. After Deputy Ambrosini arrived, Deputy Hannon searched defendant's car. Defendant did not see where he searched. Deputy Ambrosini also searched the car and brought out the gun. Only then did defendant realize the gun was in his car.

¶ 23    Following closing arguments, the jury was given the definition and issues instructions for unlawful possession of a weapon by a felon. The definition instruction stated:

"A person commits the offense of unlawful possession of a weapon by a felon when he[,] having previously been convicted of *murder*, knowingly possesses a firearm." (Emphasis added.)

The issues instruction provided:

"To sustain the charge of unlawful possession of a weapon by a felon, the State must prove the following propositions:

First Proposition: That the defendant knowingly possessed a firearm;

and

Second Proposition: That the defendant had previously been convicted of the offense of *Murder*[.]

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty." (Emphasis added.)

The jury was also given Illinois Pattern Jury Instructions, Criminal, No. 3.13X (approved Dec. 8, 2011), instructing:

"Ordinarily evidence of a defendant's prior conviction of an offense may not be considered by you as evidence of his guilt of the offense with which he is charged.

However, in this case, because the State must prove beyond a reasonable doubt the proposition that the defendant has previously been convicted of *Murder*, you may consider evidence of defendant's prior conviction of the offense of *Murder* only for the purpose of determining whether the State has proved that proposition." (Emphases added.)

¶ 24    The jury found defendant guilty of unlawful possession of a weapon by a felon. Defendant was sentenced to seven years in prison in May 2015.

¶ 25    On appeal, defendant argued, among other things, that his defense counsel was ineffective because he failed to stipulate to defendant's felon status, thereby allowing the jury to hear highly prejudicial evidence that he was a convicted murderer. In analyzing defendant's claim under *Strickland v. Washington*, 466 U.S. 668 (1984), the appellate court did not determine whether defense counsel's performance was deficient. Rather, it found that defendant could not show he suffered prejudice by the alleged deficiencies. 2018 IL App (3d) 150736-U, ¶¶ 36-38. According to the appellate court, even if defense counsel had offered to stipulate to defendant's prior felony conviction, the jury still would have learned that defendant had committed a felony and could speculate that he was convicted of "the most serious crime." 2018 IL App (3d) 150736-U, ¶ 38. The appellate court further reasoned that Deputy Hannon's testimony, as it included defendant's admission to having a gun in the car, prevented any reasonable probability of a different trial outcome. 2018 IL App (3d) 150736-U, ¶¶ 12, 38. Justice Holdridge dissented, finding no strategic reason to admit the prior conviction into evidence and that prejudice resulted from its admission because the evidence was otherwise close. 2018 IL App (3d) 150736-U, ¶¶ 44-46 (Holdridge, J. dissenting). The appellate court denied defendant's petition for rehearing. This court allowed defendant's petition for leave to

appeal. Ill. S. Ct. R. 315(a) (eff. July 1, 2018).

¶ 26                                    ANALYSIS

¶ 27    Defendant asks this court to address whether counsel may be deemed ineffective for failing to stipulate to a defendant's prior conviction for purposes of proving his felon status. Defendant claims he was thereby prejudiced.

¶ 28    In criminal prosecutions, a defendant has a constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *People v. Peterson*, 2017 IL 120331, ¶ 79. Claims alleging ineffective assistance of counsel are governed by the standard set forth in *Strickland*, 466 U.S. 668. See *People v. Domagala*, 2013 IL 113688, ¶ 36 (citing *People v. Albanese*, 104 Ill. 2d 504 (1984) (adopting the *Strickland* standard)).

¶ 29    "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *Domagala*, 2013 IL 113688, ¶ 36 (citing *Strickland*, 466 U.S. at 687). "More specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Domagala*, 2013 IL 113688, ¶ 36 (quoting *Strickland*, 466 U.S. at 687). "A ' "reasonable probability" ' is ' "a probability sufficient to undermine confidence in the outcome" ' of the proceeding." *Peterson*, 2017 IL 120331, ¶ 79 (quoting *People v. Simpson*, 2015 IL 116512, ¶ 35, quoting *Strickland*, 466 U.S. at 694). A defendant must satisfy both prongs of the *Strickland* standard to prevail on an ineffective assistance of counsel claim. *Peterson*, 2017 IL 120331, ¶ 79.

¶ 30    Here, defendant argues that his trial counsel was ineffective for failing to stipulate to his felon status, thereby allowing the jury to consider the highly prejudicial evidence that he was previously convicted of murder. It is undisputed that the only purpose for admitting evidence of defendant's prior conviction was to prove his felon status.

¶ 31    The State's brief focuses solely on whether defendant was prejudiced by counsel's failure to stipulate to his felon status. The State maintains that the appellate court "correctly found that defendant did not demonstrate *Strickland* prejudice." The State posits that, even if counsel had offered to stipulate to defendant's prior felony conviction, defendant "likely would have suffered some prejudice resulting from jury speculation about the nature of his prior crime."

¶ 32    The issue in this case calls for a straightforward application of *Strickland* to defendant's ineffective assistance of counsel claim. Defendant was charged with unlawful possession of a weapon by a felon. Defendant argues that, faced with these facts, reasonably effective defense counsel would attempt to prevent the jury from learning that defendant's prior felony conviction was for murder since the nature of his prior conviction was not relevant to proving his felon status.

¶ 33    In *People v. Walker*, 211 Ill. 2d 317 (2004), this court examined the problem with admitting other-crimes evidence of a prior conviction when its only purpose was to prove the defendant's felon status. This court considered the United States Supreme Court decision of *Old Chief v. United States*, 519 U.S. 172 (1997), and applied that case to Illinois law. *Walker*, 211 Ill. 2d at 330-40.

- 6 -

¶ 34    The defendant in *Old Chief* was charged under a federal statute making it unlawful for a felon to possess a firearm (18 U.S.C. § 922(g)(1) (1988)), assault with a dangerous weapon, and using a firearm in relation to a crime of violence. Before trial, the defendant offered to stipulate to his prior conviction to avoid revealing its name and nature. *Old Chief*, 519 U.S. at 174-76. The government refused to join in the stipulation, and the trial court allowed the government to introduce the order of judgment and commitment for the defendant's prior felony of " 'assault resulting in serious bodily injury.' " *Old Chief*, 519 U.S. at 177.

¶ 35    The Supreme Court resolved the issue by applying Federal Rule of Evidence 403. Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

¶ 36    Under Rule 403, the Supreme Court held that, when the government needs only to prove a defendant's felon status, evidence of the name and nature of the prior conviction should generally be excluded because it has no probative value and presents a substantial danger of unfair prejudice. *Old Chief*, 519 U.S. at 185-92. The Supreme Court reasoned that the jury could consider the defendant's prior "bad act" as "raising the odds" that he committed the offense charged "or, worse, as calling for preventative conviction" even if the defendant was innocent. *Old Chief*, 519 U.S. at 180-81. The name and nature of the prior conviction could "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180.

¶ 37    The Supreme Court opined that a trial court's evaluation of an evidentiary item's probative value and potential for undue prejudice should be guided "by placing the result of that assessment alongside similar assessments of evidentiary alternatives." *Old Chief*, 519 U.S. at 184-85. In dealing with the prior conviction element of the statute at issue in *Old Chief*, the Supreme Court found that "there can be no question that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant" and less prejudicial means of proof—such as a stipulation or admission—could establish the defendant's felon status. *Old Chief*, 519 U.S. at 185-86.

¶ 38    In *Walker*, this court adopted *Old Chief*'s reasoning and holding. *Walker*, 211 Ill. 2d at 336-43. We agreed with *Old Chief* that, in cases requiring proof of felon status, disclosing the nature of a defendant's prior conviction created a risk of unfair prejudice. *Walker*, 211 Ill. 2d at 337-38, 341.

¶ 39    After this court's decision in *Walker*, Illinois adopted the Illinois Rules of Evidence, and the pertinent rule is virtually the same as the federal rule at issue in *Old Chief*. Ill. R. Evid. 403 (eff. Jan. 1, 2011) ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

¶ 40    *Strickland* requires a defendant satisfy two components to prevail on an ineffective assistance of counsel claim: (1) deficient performance and (2) prejudice. *Peterson*, 2017 IL 120331, ¶ 79. Applying *Strickland* to the facts of this case, we conclude that defense counsel performed deficiently. Here, in accordance with *Old Chief* and *Walker*, if defense counsel had offered to stipulate to defendant's prior conviction, the trial court would have been obligated

to accept the stipulation. Given the high risk of prejudice inherent in disclosing defendant's prior murder conviction, defense counsel's failure to stipulate to his felon status was objectively unreasonable. Informing the jury that defendant was previously convicted of murder could hardly benefit his defense. We can conceive of no reasonable trial strategy for defense counsel not stipulating that defendant had a prior conviction for an unspecified felony.

¶ 41    Indeed, deficient performance in this case is not seriously disputed. In its brief, the State makes no attempt to justify defense counsel's failure to stipulate to defendant's felon status as trial strategy. The record in this case clearly shows that defense counsel's failure to stipulate to defendant's felon status was not based on any legitimate trial strategy but, rather, on a misapprehension of the law that was shared by the prosecutor and the trial judge. Of course, we know that under *Walker*, that understanding was wrong. See *Walker*, 211 Ill. 2d at 320 (holding that "trial court committed reversible error when it admitted evidence of the name and nature of defendant's prior felony conviction rather than accept defendant's offer to stipulate to his felon status"). Instead of offering to stipulate, defense counsel in this case agreed with the misapprehension by both the prosecutor and the trial court judge that the law required disclosing the nature of defendant's prior felony conviction to the jury. Accordingly, we find that, under *Strickland*, defendant has shown that his counsel's performance "was objectively unreasonable under prevailing professional norms." *Domagala*, 2013 IL 113688, ¶ 36.

¶ 42    Next, turning to the prejudice component, *Strickland* requires the defendant show there was a reasonable probability that the result of the proceedings in this case would have been different if the jury had not learned that defendant was previously convicted of murder. See *Domagala*, 2013 IL 113688, ¶ 36. Defendant argues that the nature of the prior conviction and the closeness of the evidence in this case made defense counsel's ineffective assistance prejudicial and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. According to defendant, when the jurors heard the evidence and were considering his innocence or guilt for possessing a gun, they knew that he had previously been convicted of murder. Defendant contends that the specter of his murder conviction and its inherently prejudicial nature loomed over his entire trial.

¶ 43    The State counters that defendant's prior murder conviction was only mentioned a few times during the trial itself. In the State's case-in-chief, the prosecutor mentioned that defendant was convicted of murder in 1990. The prior murder conviction was also mentioned when discussing defendant's felon status during the prosecutor's closing argument. The State also points out that the jury was given a limiting instruction informing them that they should only consider defendant's prior murder conviction for the limited purpose of establishing defendant's felon status and we should presume the jury followed that instruction.

¶ 44    Defendant counters that the trial court also told the jury that his felon status was due to a prior conviction for murder when he read the indictment to them and, thus, was the first thing the jurors heard, before any evidence was presented at trial. Defendant also points out that the prosecutor repeatedly mentioned his prior murder conviction during closing argument and during rebuttal at least six times.

¶ 45    We know from *Walker* that this type of prior conviction evidence generally has little probative value and creates a high risk of unfair prejudice to the defendant. *Walker*, 211 Ill. 2d

at 338. *Old Chief* defines what unfair prejudice means in this context: it is the capacity of the evidence to lure the jury into finding the defendant guilty "on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180. More specifically, it carries the inherent risk of overpersuading the jury that the defendant is a bad person who is more likely to commit the charged offense "or, worse, as calling for preventative conviction" even if the jury believes that the defendant might be innocent of the charged crime. *Old Chief*, 519 U.S. at 180-81.

¶ 46    Here, both the bad character reasoning and the "or worse" scenario recognized in *Old Chief* apply. The jury was to decide only whether defendant knowingly possessed the handgun found in the closed console of his car. Although the evidence was that defendant's conviction was from 1990, the jurors did not know the length of his sentence and could have speculated that defendant was only recently released from prison before being found with a gun in his car. The capacity of this evidence to influence the jury inappropriately and to persuade them to convict defendant as a preventative measure regardless of the evidence on the offense charged was great. However, although we believe defense counsel's ineffectiveness was highly prejudicial, we cannot say whether defense counsel's ineffectiveness alone resulted in prejudice. Rather, we must also look to the evidence in the case. See *People v. Hughes*, 2012 IL 112817, ¶ 65 ("Although we recognize that there may be circumstances where a defendant could prove that the deficient performance affected the outcome ***, the question whether a given defendant has made the requisite [*Strickland*] prejudice showing will turn on the facts of a particular case.").

¶ 47    Defendant argues that, in finding that he was not prejudiced by defense counsel's ineffectiveness, the appellate court focused solely on Deputy Hannon's testimony while ignoring defendant's testimony and the testimony of his witness, Sherry Walls. The State counters that the video evidence corroborated Deputy Hannon's testimony because it shows a strong inference that defendant admitted the gun was in the car, when defendant was handcuffed after a brief conversation and the gun was recovered shortly thereafter.

¶ 48    We have thoroughly examined the record, including the evidence and video presented at trial. We agree with defendant that the evidence was closely balanced and that there was a reasonable probability that the prior murder conviction evidence tipped the scales against defendant. As argued by defendant, this case essentially involved a credibility contest between Deputy Hannon's version of events and the version presented by defendant and his witness, Sherry Walls.

¶ 49    Deputy Hannon testified that he pulled defendant over for the traffic violations of failing to signal within 100 feet of a stop sign and speeding. He testified that, as he pulled behind defendant's vehicle, he observed defendant make a movement toward the center console. Deputy Hannon stated that, as he approached, defendant immediately put his hands up in the air and was acting very nervous. Deputy Hannon returned to his squad car and confirmed that defendant's license and insurance were valid. When he returned to defendant's vehicle, Deputy Hannon felt that defendant was still acting nervous so he ordered defendant out of the vehicle. When Deputy Hannon asked him why he was so nervous, Deputy Hannon claimed that defendant volunteered, "I have a loaded firearm in the front center console of my car." Deputy Hannon then handcuffed defendant.

¶ 50    Although the State presented a video of the traffic stop, there was no audio that may have corroborated the statement that defendant purportedly made to Deputy Hannon. The video does not show defendant dipping his right shoulder toward the center console when his vehicle was stopped, as testified to by Deputy Hannon. Nor did police test the handgun for defendant's fingerprints. Accordingly, there was no extrinsic evidence to corroborate Deputy Hannon's account of the incident regarding defendant's alleged statement.

¶ 51    Defendant's testimony contradicted Deputy Hannon's version of the incident. Defendant denied reaching toward the center console and denied being nervous. Defendant denied telling Deputy Hannon there was a gun in the car, claiming that he did not know the gun was present. Defendant also presented the testimony of Sherry Walls, who explained why defendant would not have known the gun was in the car. Sherry testified that the gun belonged to her and claimed she accidentally left it in defendant's car the day before when she borrowed the car to move. Sherry brought a receipt for the gun verifying she was the owner. The receipt was entered into evidence. Sherry further testified that she did not realize she had left the gun in the car until the next day and stated that she never told defendant that she had put the gun in his car.

¶ 52    In our view, this case presents a classic case of closely balanced evidence. The jury was faced with two plausible versions of events that depended on witness credibility. The jury was tasked with deciding whose version to believe. Because the evidence was closely balanced, we believe that informing the jurors that defendant was previously convicted of murder made Deputy Hannon's version more plausible and tipped the scales against defendant. Accordingly, we find there was a reasonable probability of a different result, had defense counsel prevented the jury from being informed of the nature of defendant's prior felony conviction. For these reasons, based on the specific facts of this case, we hold that defense counsel's performance was ineffective and defendant was prejudiced. In other words, defendant has met his burden of showing there is a " 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Domagala*, 2013 IL 113688, ¶ 36 (quoting *Strickland*, 466 U.S. at 694).

¶ 53    In light of our holding, we must consider whether a new trial would subject defendant to double jeopardy. See *People v. Diggins*, 235 Ill. 2d 48, 58 (2009). Defendant does not dispute the sufficiency of the evidence and has not raised a claim that double jeopardy bars a new trial. This case hinged on witness credibility, and viewing the evidence in the light most favorable to the prosecution, we believe it is possible that a jury could have believed Deputy Hannon's testimony over that of defendant and Sherry Walls. We find there was sufficient evidence that the jury could have found defendant guilty beyond a reasonable doubt and therefore hold that double jeopardy does not preclude a new trial. See *Diggins*, 235 Ill. 2d at 58. Nothing in this opinion should be construed as a finding regarding defendant's guilt that would be binding on remand. See *Diggins*, 235 Ill. 2d at 58.

¶ 54                                    CONCLUSION

¶ 55    We reverse the judgment of the appellate court affirming defendant's conviction and remand the case to the circuit court for further proceedings.

¶ 56    Reversed and remanded.