**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210350-U

Order filed August 28, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit, Knox County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0350 Circuit No. 19-CF-541 |
| GAVIN P. JONES, | ) ) ) | Honorable Raymond A. Cavanaugh, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justice Albrecht concurred in the judgment.
Justice McDade specially concurred.

_____

**ORDER**

¶ 1   *Held*:   The court did not deny defendant a fair trial by giving the jury a non-IPI instruction. The State's comments and argument did not deny defendant a fair trial. A new trial is not warranted based on a change to the rules of evidence regarding medical records.

¶ 2   Defendant, Gavin P. Jones, appeals his conviction for unlawful possession of a controlled substance. Defendant argues that the Knox County circuit court denied him a fair trial by giving the jury a non-Illinois Pattern Jury Instruction (non-IPI), which he argues contained an improper

mandatory presumption. Defendant further argues that the State committed misconduct by referring to his prior convictions as felonies and improperly shifting the burden of proof to him by arguing he failed to produce evidence that he had a prescription for hydrocodone. Last, defendant argues that he should receive a new trial due to a change in the rules of evidence, which would now allow him to admit his medical records into evidence. We affirm.

¶ 3                                   I. BACKGROUND

¶ 4        The State charged defendant with one count of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2018)), alleging that he unlawfully possessed hydrocodone on or about August 15, 2019. Prior to trial, the State filed a motion *in limine* seeking to bar defendant from admitting his medical records into evidence. The motion relied, in part, upon section 115-5 of the Code of Criminal Procedure of 1963, which provides for the admissibility of certain business records but specifically excludes medical records (725 ILCS 5/115-5(a), (c)(1) (West 2018)). The court granted the motion and excluded the medical records but held that defendant could testify that he had been given a prescription for hydrocodone.

¶ 5        At trial, an officer testified that he responded to a call of a disturbance. The officer encountered defendant at that call. The officer arrested defendant and conducted a search incident to arrest. The officer found a grayish white plastic container in defendant's pocket. The container did not have any identifying information indicating what was inside, where the contents of the container came from, or to whom it belonged. The officer located pills in the container. Pictures of the container and pills were entered into evidence. A forensic scientist testified that she tested one of the pills and the pill tested positive for hydrocodone. The remaining pills had the same markings as the one that tested positive for hydrocodone, but the forensic scientist did not test those pills.

2

¶ 6        Defendant testified that the plastic container recovered from him was his pill bottle and he was aware it contained hydrocodone. Doctors and/or physician assistants from OSF gave him numerous prescriptions for hydrocodone—10,000 pills—between 2013 and 2016 and the pills that he was found with were from those prescriptions. Defendant had back pain and worked in construction. He used the pills as he needed them. Defendant explained the pills were in the container because when he is working he sweats and "[e]verybody has a different *** pill divider or something *** I just put it - - it's more waterproofed than the others."

¶ 7        After defendant's testimony, the State offered his prior convictions for impeachment purposes. In doing so, the State said, "at this point, we would offer the felony convictions of [defendant]." The State then noted that in 2017 he was convicted of possession of methamphetamines and attempt possession of methamphetamine manufacturing materials. The court noted that the evidence would be allowed for impeachment purposes only. When the State sought to publish certified copies of the convictions, defendant's counsel noted an objection but requested to discuss that objection outside of the jury's presence. Counsel objected on the basis that the State noted the prior convictions were felony convictions and counsel did not believe it was proper for the jury to be informed of the level of the offenses. Counsel moved for a mistrial. The court did not believe it was improper or overly prejudicial to state the prior convictions were felonies. The court denied the motion for mistrial. The convictions were published to the jury.

¶ 8        During the jury instruction conference, the State proposed a non-IPI instruction, based on a statute, that would instruct the jury that one can only lawfully possess a controlled substance in the container in which it was delivered to him by the person dispensing the substance. Defense counsel objected and argued that the instruction "is effectively telling the jury how they should decide this case." The court allowed the instruction over the defense's objection.

3

¶ 9    During closing argument, defense counsel noted that they did not dispute that defendant had hydrocodone but told the jury to remember that he had a prescription for it. Counsel noted that the State wanted the jury to believe that the hydrocodone defendant possessed could not have been from his previous prescriptions and asked the jury to use their personal experiences. Counsel argued it was not unheard of for a person to use less than all of a prescription medication when it is first received. Additionally, people do not always throw out old prescription medications. Counsel further argued that defendant testified he used the hydrocodone as he needed it. Counsel asked that the jury use their common sense when deciding whether the plastic container in defendant's possession looked like a prescription bottle. Counsel noted that the ultimate issue is whether defendant had a valid prescription and had the hydrocodone in the correct bottle.

¶ 10    In rebuttal, the State argued that prescriptions are not given out in blank containers and that it did not matter how many prescriptions defendant had been given because if defendant did not have the hydrocodone in the bottle in which it was dispensed to him then he was not lawfully possessing it. Further, in regard to defendant's testimony that he had a prescription, the State argued that defendant was "basically saying take my word for it alone. Take my word for it alone. I mean, you *** don't even take my word for it alone, right? I'm required to come in here and present proof." The State continued that "he does not have a burden, but then again, if he's going to present evidence, let us take a look at the state of the evidence and what is lacking." The State noted that defendant did not have any specific amounts of what he was prescribed and that defendant did not bring in a prescription that showed any certain amount, on a certain day, or from a certain pharmacist. Further, it stated that there was no container showing he was prescribed the hydrocodone. The State continued, "[t]here's no doctor coming in here and

4

testifying, oh, yeah, I prescribed these pills. There's no physician *** assistant saying, sure. Yeah. I prescribed these pills, 10,000 of them, and they should be expected to last three to six years after the time I've prescribed them. Nothing from a pharmacy. How difficult is that to go to a --." At that point defense counsel objected that the State was shifting the burden to defendant. The State responded that it was just commenting on the state of the evidence. The court overruled the objection noting that it was argument. The State continued that there was "[n]othing from OSF. No specific dates. No specific pharmacy, nothing. No specificity whatsoever and all coming from an individual whose credibility you're supposed to accept, an individual who's been twice convicted—a twice-convicted felon." Defense counsel objected and was again overruled. In summation, the State reiterated that it had the burden of proof.

¶ 11    The court instructed the jury that any evidence received for a limited purpose should not be considered for any other purpose. Additionally, the State had the burden of proving defendant guilty beyond a reasonable doubt. Therefore, the burden remains with the State throughout the case and defendant is not required to prove his innocence. The jury was further instructed that evidence of defendant's prior convictions may only be considered as it may affect his believability as a witness and could not be considered as evidence of his guilt. The court also instructed the jury pursuant to the non-IPI instruction tendered by the State that "[a] person to whom or for whose use any controlled substance has been prescribed or dispensed by any practitioner may lawfully possess a substance only in the container in which it was delivered to him or her by the person dispensing such substance."

¶ 12    The jury found defendant guilty. Defense counsel filed a motion for new trial alleging the court erred by, among other things: (1) failing to grant a mistrial after the State noted defendant's prior convictions were felonies; (2) issuing the non-IPI jury instruction tendered by the State;

5

(3) failing to grant a mistrial after the State improperly shifted the burden to defendant during rebuttal closing argument by commenting about what evidence was not presented to the jury to support defendant's assertion he had a prescription for hydrocodone; and (4) allowing the State to describe defendant as a "twice convicted felon" during rebuttal closing argument. The motion also argued that the improper comments during closing argument were compounded by the State's argument regarding the lack of evidence of defendant's prescription when the State had successfully moved to exclude admission of his medical records. The court denied the motion and sentenced defendant to one year in prison. Defendant appeals.

¶ 13                                   II. ANALYSIS

¶ 14                                  A. Jury Instruction

¶ 15        Defendant argues that he was denied a fair trial because the court gave a non-IPI instruction which contained an improper mandatory presumption. He further argues that this presumption improperly shifted the burden to defendant to prove he legally possessed the hydrocodone.

¶ 16        "Where there is no IPI jury instruction on a subject on which the court determines the jury should be instructed, the court has the discretion to give a non-IPI instruction." *People v. Hudson*, 222 Ill. 2d 392, 400 (2006). We review a court's decision to give a non-IPI instruction for an abuse of discretion. *People v. Tompkins*, 2023 IL 127805, ¶ 42. "Whether the court has abused its discretion in giving a particular non-IPI instruction will depend on whether that instruction was an accurate, simple, brief, impartial, and nonargumentative statement of the applicable law." *Hudson*, 222 Ill. 2d at 400. "The function of instructions is to convey to the jurors the correct principles of law applicable to the facts so that they can arrive at a correct conclusion according to the law and the evidence." *People v. Fuller*, 205 Ill. 2d 308, 343 (2002).

6

¶ 17    Contrary to defendant's assertion, the non-IPI instruction given in this matter did not contain any presumption. "A presumption is a legal device that either permits or requires the trier of fact to assume the existence of an ultimate fact, after establishing certain predicate facts." *People v. Woodrum*, 223 Ill. 2d 286, 308 (2006). The non-IPI instruction, which tracked section 312(g) of the Illinois Controlled Substances Act (Act) (720 ILCS 570/100 *et. seq.* (West 2018))[1], simply instructed the jury of the only manner in which a person could lawfully possess a controlled substance that was prescribed to him or her—in the container in which it was delivered by the person dispensing it. The non-IPI instruction did not permit or require the jury to assume any facts and thus, did not contain an improper presumption. As such, and as the non-IPI instruction "was an accurate, simple, brief, impartial, and nonargumentative statement of applicable law" (see *Hudson*, 222 Ill. 2d at 400), we cannot say the court abused its discretion in giving it.

¶ 18    Additionally, we reject defendant's arguments that the instruction was improper because he was not charged under section 312(g) and the instruction created an additional element of the offense. Section 312(g) does not create a separate offense and the instruction does not create an additional element, rather they simply further define what is necessary for defendant to establish an exemption allowing lawful possession. Specifically, the Act states that "[e]xcept as otherwise authorized by this Act, it is unlawful for any person knowingly to possess a controlled or counterfeit substance." 720 ILCS 570/402 (West 2018). Our courts have construed this language to mean that "possession of a controlled substance is unlawful *per se*," (*People v. Martin*, 2011 IL 109102, ¶ 16) and "unlawfulness is not a separate element" (*People v. Rodriguez*, 398 Ill.

---

[1]Compare non-IPI instruction, ¶ 11 *supra.*, with 720 ILCS 570/312 (g) (West 2018) ("A person to whom or for whose use any controlled substance has been prescribed or dispensed by a practitioner, or other persons authorized under this Act *** may lawfully possess such substance only in the container in which it was delivered to him or her by the person dispensing such substance.").

App. 3d 436, 442 (2009)). Additionally, "[i]t is not necessary for the State to negate any exemption or exception in this Act in any complaint, information, indictment *** or in any trial *** under this Act. The burden of proof of any exemption or exception is upon the person claiming it." 720 ILCS 570/506 (West 2018). The Act also provides that certain persons "may lawfully possess controlled substances under [the] Act," including, an "ultimate user * * * under a lawful prescription of a practitioner." *Id.* § 302(c)(3). Section 312(g) further defines how one can fall under the exemption of a lawful prescription and that is to possess the controlled substance in the container in which it was delivered by the person dispensing it. In sum, it is *per se* unlawful to possess a controlled substance and, read together, sections 302(c)(3) and 312(g) provide what a person must establish to show their possession was lawful pursuant to an exemption for lawful prescriptions. See *e.g. Martin*, 2011 IL 109102, ¶ 21 ("The entire statute must be read as a whole, considering all relevant parts."). We also note that our decision in this regard is in line with the opinion in *People v. Haiman*, 2018 IL App (2d) 151242. In that matter, defendant argued that the court erred by barring her from testifying that she had a lawful prescription for the controlled substance she possessed. *Id.* ¶ 18. The court indicated that the testimony in defendant's offer of proof regarding the prescription was insufficient because section 570/312(g) required the controlled substance to be in the container in which it was dispensed and there was no testimony to that effect. *Id.* ¶ 23. Despite our determination on this issue, we recognize the absurdity that could result from the potential application of the statute to the many individuals who utilize pill boxes, for example, to organize their medications. However, that is an issue for the legislature.

8

¶ 19                                    B. Misconduct

¶ 20         Defendant argues that the cumulative effect of the State's misconduct deprived him of a fair trial. Specifically, he asserts that the State improperly (1) told the jury that defendant's prior convictions, which were admitted for impeachment purposes, were felonies; (2) shifted the burden of proof to defendant by arguing he failed to produce evidence that he had a prescription for hydrocodone after the State successfully excluded that evidence; and (3) referred to defendant as a twice-convicted felon.

¶ 21         As to defendant's first contention, he cites no law providing that the State is prohibited from referring to his prior convictions as felonies. The case he does cite, *People v. Atkinson*, 186 Ill. 2d 450 (1999), does not support his position. That case held that the State cannot put the mere fact that the defendant was convicted of a felony before the jury but must rather set forth the nature of the conviction. *Id.* at 457-58. Nowhere in the *Atkinson* opinion does the court indicate that the introduction of the fact that the conviction is a felony, along with the nature of the conviction, is improper. See *id.*, generally. This is particularly damaging to defendant's argument because, as the appellant, he has the burden of persuading this court that the felony reference was improper. See *Yamnitz v. William J. Diestelhorst Co.*, 251 Ill. App. 3d 244, 250 (1993) (noting the appellant generally has the burden of persuasion on appeal). Moreover, we do not believe that the State's passing reference to the convictions as felonies while introducing them into evidence was overly prejudicial to defendant or prejudiced him any more than the jury learning the nature of the convictions. Further, as noted by the State, there is no rule prohibiting the State from referring to the convictions as felonies and, in light of the foregoing, defendant has failed to persuade this court that it was improper to do so.

¶ 22        Turning to defendant's contention that the State shifted the burden of proof, the State generally cannot comment on defendant's failure to produce evidence as defendant has no obligation to do so. *People v. Suggs*, 2022 IL App (2d) 200713, ¶ 40. "However, the State's comment on a defendant's failure to produce evidence does not always constitute burden shifting." *Id.* ¶ 41. Our supreme court has stated "it is our conclusion that though failure to call a witness or produce evidence may not be relied on as substantial proof of the charge, nonetheless, if other evidence tends to prove the guilt of a defendant and he fails to bring in evidence within his control in explanation or refutation, his omission to do so is a circumstance entitled to some weight in the minds of the jury, and, as such, is a legitimate subject of comment by the prosecution." *People v. Williams*, 40 Ill. 2d 522, 529 (1968). Part of the purpose of closing arguments is for the parties to argue why the law and evidence compel a verdict in their favor. *People v. Nichols*, 218 Ill. 2d 104, 121 (2005). The State may comment on the evidence and any reasonable inferences that stem therefrom, including inferences that reflect negatively on defendant. *Id.* "[T]he challenged remarks must be viewed in their context." *Id.* at 122.

¶ 23        Here, defendant argues the State acted improperly by commenting on defendant's failure to produce any evidence—other than his testimony—that the hydrocode he possessed was pursuant to a prescription. However, once defendant introduced evidence that he had a prescription for the hydrocodone, the State bore the burden of disproving that exemption beyond a reasonable doubt. See *People v. Kolichman*, 218 Ill. App. 3d 132, 144 (1991). Thus, the strength of the evidence regarding defendant's purported prescription was well within the topics that the State would legitimately comment on in order to discredit defendant's testimony that the hydrocodone he possessed was pursuant to a prescription. In other words, the State was within its right to comment on the state of the evidence, including the lack of evidence corroborating

10

defendant's testimony regarding the prescription, in order to persuade the jury that the hydrocodone that he possessed was not pursuant to a prescription, just as defendant was allowed to argue in closing that his testimony established that the pills he was found with were prescribed to him. The State's comments were squarely within the purpose of closing argument as the State was simply arguing why the evidence, or lack thereof, supported a determination that the hydrocodone defendant possessed was not pursuant to a valid prescription. Based on the foregoing, we cannot say that the comments were improper burden shifting.

¶ 24    Defendant also argues the State acted improperly by arguing that he failed to produce evidence of his prescription when the State sought the exclusion of his medical records evidencing the prescription. We agree that the State's comment that defendant presented nothing from OSF could be construed as indicating that defendant did not have evidence in the form of medical records from OSF, even though the State knew they existed as it obtained a ruling excluding such records. However, the statement could also be construed as referring to testimony from medical professionals at OSF, which would be proper as defendant could have subpoenaed his physicians.

¶ 25    Last, we disagree with defendant that the State improperly commented on his status as a twice-convicted felon during closing arguments. The State did so while questioning defendant's credibility regarding his assertion that the hydrocodone he possessed came from prescriptions he received over a three-year period, three years prior to being found with it. Looking at the closing argument as a whole, it is evident that the comment was not simply being utilized to call into question defendant's credibility as to whether he had a prescription, but also as to whether the hydrocodone he possessed came from the purported prescription. Defendant's convictions were only allowed to be considered as they may have affected his credibility and the State's comment

11

on his prior felonies related directly to defendant's credibility. Moreover, our courts have noted that "any felony conviction is presumed to relate to testimonial deceit." *People v. Paul*, 304 Ill. App. 3d 404, 410 (1999). As such, we see no impropriety by the State in this regard.

¶ 26　　As we have determined that the State's challenged comments were not improper, we cannot say that the cumulative effect of the comments deprived defendant of a fair trial. Therefore, defendant is not entitled to a new trial due to the State's comments.

¶ 27　　　　　　　　　　　C. Change in Applicable Law

¶ 28　　Defendant argues that a change in the law, which results in his medical records now being admissible, applies to his case and therefore, the matter should be remanded for a new trial. Specifically, his medical records were deemed inadmissible based upon section 115-5(c)(1) of the Code. However, in *People v. Deroo*, 2022 IL 126120, ¶ 45—which was decided after defendant's trial but while his appeal was pending—the court amended Illinois Rule of Evidence 803(6) and under the amended rule the medical records would be admissible. Defendant argues that this ruling applies to his case because the court stated that the "amendment is applicable to all pending cases, including the case at bar." *Id.*

¶ 29　　Initially, we note that the State argues that this issue was forfeited because defendant did not raise it in a posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, defendant is not arguing that the court erred by excluding the records under the law as it existed at the time of trial; rather he argues that he is entitled to a new trial because a subsequent change in the law would now allow for the admittance of the records. He could not have previously made this argument, as the change in law did not occur until this matter was on appeal. As such, it does not appear that defendant has forfeited this issue. We decline to apply forfeiture under the

12

circumstances of this case. See *People v. Sophanavong*, 2020 IL 124337, ¶ 21 (providing that "forfeiture is a limitation on the parties and not the court").

¶ 30        As defendant argues, *Deroo* amended Rule 803(6) by removing the medical records exclusion for criminal cases and determining that to the extent the amended rule conflicted with section 155-5(c)(1) of the Code, the rule took precedence. *Deroo*, 2022 IL 126120, ¶ 45. Defendant is also correct that *Deroo* held that the amendment was applicable to all pending cases, including that matter. *Id.* However, that does not dictate that reversal is warranted in this matter. Specifically, in *People v. Hunter*, 2017 IL 121306, ¶ 33 the supreme court stated

> "Because Hunter's trial court proceedings have been concluded, and no further trial court proceedings are necessitated by reversible error, applying the amended statute retroactively to Hunter's case would result in this court effectively creating new proceedings for the sole purpose of applying a procedural statute that postdates his trial and sentence. We have grave concerns about such a result."

Our supreme court further noted that the United States Supreme Court had spoken to this issue and quoted it as saying " 'the promulgation of a new rule of evidence would not require an appellate remand for a new trial.' " *Id.*, ¶ 34 (quoting *Landgraf v. USI Film Products*, 511 U.S. 244, 275, n.29 (1994)). The *Landgraf* footnote quoted by *Hunter* continued on that "orders approving amendments to federal procedural rules reflect the commonsense notion that the applicability of such provisions ordinarily depends on the posture of the particular case." *Landgraf*, 511 U.S. at 275, n.29. The *Hunter* opinion further quoted a concurrence from *Landgraf* that indicated a new rule regarding testimony would not apply to testimony already taken, such that a reversal on appeal would not be warranted where the new rule had not been applied at the trial which antedated the new rule. *Hunter*, 2017 IL 121306, ¶ 35. In light of

13

*Hunter* and *Landgraf*, we conclude that because Rule 803(6) was not amended until after defendant's case was on appeal and no further trial court proceedings are necessitated by reversible error, as set forth above, the amended rule does not apply to his case. Thus, a new trial is not warranted.

¶ 31 We recognize that the court applied the amended rule to the defendant's case in *Deroo* despite the fact that it did not exist until after his case was on appeal. However, in that case, the court had admitted a chemical blood test pursuant to a section of the Illinois Vehicle Code which would have been excluded by the prior version of Rule 803(6). *Id.* ¶¶ 1-2. Therefore, the court was able to apply the amended rule, which would have allowed the chemical blood test to be admitted, without reversing the matter for the sole purpose of applying the amended rule. In other words, the court could apply the amended rule to the appeal pending before it without requiring additional proceedings. The same is not true in defendant's case. Thus, defendant's case is distinguishable from *Deroo*.

¶ 32                                III. CONCLUSION

¶ 33 The judgment of the circuit court of Knox County is affirmed.

¶ 34 Affirmed.

¶ 35 JUSTICE McDADE, specially concurring:

¶ 36 The sole reason I believe this case must be affirmed is because section 312(g) mandates it. But for section 312(g)'s blanket prohibition on possessing certain pills in any container other than the one in which they were dispensed, I would be dissenting.

¶ 37 I believe that the prosecutor did in fact shift the burden of proof to Jones in this case. Regarding the prosecutor's comment on Jones' failure to produce evidence of a hydrocodone prescription, it must be remembered that the State filed a pretrial motion *in limine* to exclude

14

medical records regarding Jones' prescription (*supra* ¶ 4). The circuit court granted the motion and thereby prohibited Jones under section 115-5(c)(1) of the Code[2] from attempting to present medical records regarding his prescription. While the court did allow Jones to testify regarding the prescription, he was prohibited from providing the very evidence that the prosecutor unfairly and prejudicially criticized Jones in front of the jury for not producing. Quite simply, such conduct by the State should never be allowed.

¶ 38        I also disagree with what I consider to be the majority's apologist analysis regarding the State referring to Jones as a "twice-convicted felon" (*supra* ¶ 25). Again, the comment was made while the prosecutor was attacking Jones for not presenting evidence of his prescription— specifically, no evidence from a pharmacy. *Supra* ¶ 10. The prosecutor then stated, "[n]o specificity whatsoever and all coming from an individual whose credibility you're supposed to accept, an individual who's been twice convicted—a twice-convicted felon." *Id.* I find the prosecutor's comment to be sufficiently close to an expression of personal belief regarding the credibility of a witness such that it was prohibited by Illinois law. See, *e.g.*, *People v. Rogers*, 172 Ill. App. 3d 471, 476 (1988). Moreover, the only case cited by the majority in its brief analysis of this issue in paragraph 25, *Paul*, does not stand for the proposition that a prosecutor can comment on a defendant's felon status in closing argument. See generally *Paul*, 304 Ill. App. 3d at 405-13.

¶ 39        I also write separately to comment on other significant aspects of this case that warrant notice even though they would not support a dissent.

---

[2]Our supreme court has since amended Rule 803(6) to allow for the introduction of such medical records. *Deroo*, 2022 IL 126120, ¶ 45. Because supreme court rules take precedence over statutory rules of evidence in cases in which they conflict, the amended Rule 803(6) prevails. *Id.*

¶ 40    First, I believe the majority mischaracterizes Jones' jury-instruction argument and therefore applies an incorrect standard of review. The majority interprets Jones' argument as claiming that the non-IPI instruction itself *contained* a mandatory presumption. It is true that at various points in his briefs, Jones states the circuit court erred when it gave the non-IPI instruction. However, the actual substance of his argument is not that the non-IPI instruction itself was incorrect. Rather, his argument is that the inclusion of the non-IPI instruction *created* a situation in which the applicable law was rendered incorrect—that is, that the addition of the non-IPI instruction based on section 312(g) of the Act, when combined with the two IPI instructions the circuit court gave to the jury on possession of a controlled substance,[3] inaccurately conveyed the law by creating an improper mandatory presumption of guilt. In such a situation, appellate review is *de novo*: "[a]lthough the giving of jury instructions is generally reviewed for an abuse of discretion, when the question is whether the jury instructions accurately conveyed to the jury the law applicable to the case, our review is *de novo*." *People v. Pierce*, 226 Ill. 2d 470, 475 (2007). The case cited by the majority for the abuse-of-discretion standard, *Tompkins*, also acknowledges the distinction between whether a non-IPI instruction should have been given and whether the instruction accurately conveyed the applicable law. *Tompkins*, 2023 IL 127805, ¶ 42 (holding that "[t]he question of whether a jury instruction is legally correct is reviewed *de novo*"). Thus, while I agree that Jones' jury-instruction argument ultimately lacks merit, I do not join in the majority's analysis of that issue under the abuse of discretion standard.

¶ 41    Second, while I agree with the majority that the prosecutor's reference in this case to Jones' convictions as felonies in front of the jury ultimately did not constitute reversible error

---

[3]In this case, the court gave IPI instructions 17.27 and 17.28 to the jury (Illinois Pattern Jury Instructions, Criminal, Nos. 17.27, 17.28 (4th ed. 2000)).

16

(*supra* ¶ 21), I wish to emphasize that such references can be problematic due to the unpredictable effect they can have on juries. *Cf. People v. Moore*, 2020 IL 124538, ¶ 30-52 (discussing the impact other-crimes evidence can have on a jury and its potential for juries to be lured into a guilty verdict). It is important that the majority's analysis on this issue not be construed as standing for a blanket proposition that a reference by a prosecutor to a defendant's prior convictions as felonies can never be a basis for reversal.

¶ 42      Third, I do not join in paragraphs 28-31 of the majority's analysis in which it addresses Jones' argument that he is entitled to a new trial based on the amendment to section 115-5(c)(1), which now permits the admission of medical records. While I agree that Jones' argument is without merit, I would reach that conclusion based on the applicability of section 312(g) alone—namely, due to section 312(g)'s aforementioned prohibition, allowing the medical record Jones had would be inconsequential upon retrial.

¶ 43      Fourth, I write separately to emphasize what seems to me to be the absurdity of section 312(g) of the Act. Section 312(g) appears within a statute that addresses "Requirements for dispensing controlled substances." 720 ILCS 570/312 (West 2018). In other words, the statute itself is aimed at regulating practitioners. *Id.* Amid those regulations appears section 312(g), which states:

> "A person to whom or for whose use any controlled substance has been prescribed or dispensed by a practitioner, or other persons authorized under this Act, and the owner of any animal for which such substance has been prescribed or dispensed by a veterinarian, may lawfully possess such substance *only in the container in which it was delivered to him or her by the person dispensing such substance*." (Emphasis added.) *Id.* § 312(g).

17

The illogical consequences of this statute are plainly apparent. It is very common for individuals to use containers such as weekly pill boxes or other stand-alone containers to carry or store their pills, even if those pills constitute controlled substances under section 312(g), whether that be at home, in luggage, or, as here, at work, because people commonly do not take their entire supply of pills along if they only need a few. As it now stands, the statute puts countless Illinois citizens who would have no reason to even be aware of this statute at risk of being charged with and convicted of illegal drug possession for acting in a perfectly reasonable manner. The legislature should revisit this statute and consider at minimum whether it should be placed where the people it impacts are likely to see it and whether some exceptions or exemptions ought to be added.